IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| WRIGHT'S WELL CONTROL SERVICES, LLC | § § § | |
| *Plaintiff*, | § § § | |
| | § | Civil Action No. _____ |
| v. | § § | JURY TRIAL DEMANDED |
| OCEANEERING INTERNATIONAL, INC., AND CHRISTOPHER MANCINI, INDIVIDUALLY | § § § | |
| *Defendants*. | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**COMES NOW**, Plaintiff Wright's Well Control Services, LLC ("WWCS" or "Plaintiff"), who files this Original Complaint against Defendants Oceaneering International, Inc., ("Oceaneering") and Christopher Mancini ("Mancini") (collectively, "Defendants").

## I.   PARTIES

1.      Plaintiff Wright's Well Control Services, LLC is an entity formed under the laws of the State of Louisiana with its principal place of business located at 6072 Candice Lane, Lake Charles, LA 70615. Plaintiff owns all rights and interest in U.S. Patent No. 8,413,725 ("the '725 Patent"). A copy of the '725 Patent is attached hereto as Exhibit A.

2.      Defendant Oceaneering International, Inc. is an entity formed under the laws of the State of Delaware with its principal place of business located at 11911 FM 529, Houston, Texas 77041. Oceaneering is licensed to do and is doing business in the State of Louisiana and

may be served with process through its registered agent, CT Corporation System, 5615 Corporate Blvd., Suite 400B, Baton Rouge, LA 70808.

3.     Defendant Christopher Mancini is an individual resident of Houston, Texas, and employee of Defendant Oceaneering.

## II.     JURISDICTION AND VENUE

4.     This is an action for patent infringement arising under the laws of the United States, 35 U.S.C. § 101, et seq., and particularly 35 U.S.C. §§ 271-287.

5.     This is also an action for breach of confidential relationship, breach of contract, common law misappropriation, misappropriation of trade secrets, tortious interference with prospective business relations, fraudulent inducement, business disparagement, and unfair competition under the laws of the State of Texas and Texas common law. This is also an action for misappropriation of trade secrets under laws of the State of Louisiana.

6.     This Court has exclusive subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) based upon Plaintiff's cause of action for infringement of the '725 Patent. This Court also has jurisdiction because at some of the Defendants activities have taken place aboard a U.S. flagged vessel.

7.     This Court has supplemental jurisdiction over Plaintiff's remaining claims under 28 U.S.C. § 1367, as they form part of the same case or controversy.

8.     The Defendants are subject to personal jurisdiction in this Court because they have conducted and continue to conduct business in the Eastern District of Louisiana. Specifically, Oceaneering maintains places of business at 201 Saint Charles Ave, Suite 2500, New Orleans, LA 70170 and 227 Clendenning Road, Houma, LA 70363 (Terrebonne Parish), and lists Bayou Vista, Houma, and New Orleans, Louisiana as "US Operational Bases" (see

**PLAINTIFF'S ORIGINAL COMPLAINT**

www.oceaneering.com/contact/locations/). Further, Defendants' infringing and tortious activity continues to take place in this jurisdiction and off the coast of New Orleans.

9.      Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400(b).

### III.    FACTS

### WWCS' Hydrate Remediation System

10.     Wright's Well Control Services, LLC was founded in 2006 by David C. Wright with the goal of providing safe, cost-effective and innovative oil and gas well service solutions. WWCS is well-known for its problem solving capabilities and has become a leader amongst its competition for subsea and deep water solutions.

11.     At the center of WWCS' technological innovations is its ability to remove or remediate hydrate formations within a pipeline or umbilical, particularly in subsea, deep-water applications.   WWCS was the first to design, develop, manufacture, and successfully use a system having a subsea separator and pump for hydrate remediation in deep-water application.

12.     A "hydrate" occurs when water becomes mixed with the oil and/or gas within a pipeline at certain pressures and temperatures.   The pressure and temperatures in deep water cause hydrates to consolidate. In turn the pipeline "ices up" or forms "hydrate plugs." In addition, asphaltenes and paraffin can form blockages along with the hydrate plugs, or separately.

13.     The hydrate blockages result in a loss of production and therefore, revenue.

14.     To find a solution for this problem, WWCS spent eighteen months and a great amount of financial and personnel resources, researching, testing, and developing a system for preventing and removing hydrates: the Wright's Hydrate Remediation System ("Remediation

System"). *See* Exhibit B, Article from Offshore Magazine on WWCS' Remediation system titled, "New hydrate skid offers deepwater remediation option," describing the system generally.

15.     Prior to WWCS' Remediation System, remediation (or removal) of hydrates was time-consuming, expensive, and dangerous depending on the location and extent of the blockage. In many cases removal of the hydrates was just not possible. WWCS' Remediation System provides a safe, cost-effective, and time saving solution to the formation of hydrates in subsea deep-water pipelines.

16.     The Remediation System functions by pulling a vacuum on the pipeline. Drawing down the pipeline pressure causes the hydrate to "melt." Once the hydrate starts to melt, the plug will dislodge and begin to move forward which increases the dissolution rate of the hydrates.

17.     The Remediation System may also include an injection system capable of adding multiple chemicals such as xylene, along with other hydrate inhibitors.

**Oceaneering's Theft of WWCS' Hydrate Remediation System**

18.     In 2008, ATP Oil & Gas Corp. ("ATP") approached WWCS to review a hydrate remediation system that Oceaneering had unsuccessfully attempted to use to remove hydrates from a pipeline for ATP.

19.     ATP contacted WWCS after several failed attempts by Oceaneering to remove the hydrates. WWCS solved ATP's hydrate problem using the WWCS Remediation System.

20.     On December 11, 2009, WWCS and Oceaneering entered into a Reciprocal Nondisclosure of Confidential & Proprietary Information Agreement ("NDA"). A copy of the NDA is attached hereto as Exhibit C. The clear intent of this agreement was to protect

**PLAINTIFF'S ORIGINAL COMPLAINT**

confidential, proprietary and/or trade secret information disclosed by Plaintiff to Oceaneering regarding WWCS' Hydrate Remediation System.

21.     WWCS and Oceaneering agreed, *inter alia*, that:

a.  Neither party shall divulge or use any proprietary information disclosed to it hereunder by the other party for any purpose not connected with the effort contemplated by the Agreement. (¶ 4);

b.  <u>Disclosing Party shall own all right, title and interest (including patent rights, copyrights, trade secret rights, trademark rights and all other intellectual and industrial property rights of any sort throughout the world relating to any and all inventions (whether or not patentable), works of authorship, designs, know-how, ideas and information conceived or reduced to practice, in whole or in part, by disclosing party during the term of this Agreement that relate to the subject matter of, or arise out of, or in connection with Disclosing Party's services or projects, or any Proprietary Information.</u>  The Agreement is not to be construed as a work made for hire.  Except for the limited use rights set forth herein, this agreement does not grant, assign or transfer to the Receiving Party a license (expressly, by implication, estoppel or otherwise) under, or any rights of ownership in, the confidential information, any invention, any patent, trademark, copyright, or application therefor, or any trade secret now or hereafter owned or controlled by Disclosing Party. (¶ 7) (emphasis added);

22.     Oceaneering (the Receiving Party) knew or should have known its duties and obligations under the NDA.

23.     Under the protection of the NDA and its confidential relationship with Oceaneering, WWCS disclosed certain trade secret and confidential information to Oceaneering regarding the Remediation System, specifically information relating to the subsea separator and pump. Oceaneering could not have obtained this information otherwise.

24.     At the time ATP approached WWCS, Oceaneering did not have a working hydrate remediation system for deep-water applications.

25.     Under the NDA and its confidential relationship with Oceaneering, WWCS disclosed to Oceaneering that a working hydrate remediation system would require at least the following: a subsea separator, larger coiled tubing, and a subsea pump capable of creating a vacuum to efficiently decrease the pressure in the pipeline. In addition, WWCS disclosed specific know-how pertaining to how these particular components must be connected, aligned, deployed, and operated in order for the remediation system to successfully remove hydrates.

26.     The confidential information and material provided to Oceaneering by WWCS included schematics or drawings of the system and the separator; all necessary testing for each component of the system; material certifications for the material used to construct the system; all necessary drawings to show how the system connects to the wellhead or pipeline, as well as how each component must be connected and arranged; and all engineering relating to the separator, pump, and pad eyes used for lifting the system safely.  All of this information and material are trade secrets owned by WWCS and protected under the NDA. A copy of certain confidential information disclosed to Oceaneering is being filed concurrently herewith under seal as Exhibits D, E, F, G, and H. Exhibit D contains confidential drawings and schematics of the hydrate remediation skid; Exhibit E contains confidential material certifications for the hydrate remediation skid; Exhibit F contains confidential certifications and engineering information on the subsea pump used with the hydrate remediation system; Exhibit G contains a study of the complete Hydrate Remediation System completed by Keystone Engineering; and Exhibit H contains confidential information relating to the engineering of the pad eyes and lifting capability and requirements for the hydrate remediation skid.

27.     The incorporation of a subsea separator in the remediation system is required for the system to perform. Without a subsea separator, when gas is introduced into the system, the

**PLAINTIFF'S ORIGINAL COMPLAINT**

gas and fluid mixture causes a significant reduction in the pumping ability of the subsea pump, or in many cases causes the pump to implode.  Oceaneering did not possess this knowledge prior to obtaining it from WWCS.

28.     The WWCS Remediation System successfully cleared the hydrates in ATP's pipeline. A copy of a presentation created by James C. Wells of ATP on the success of the remediation job is attached hereto as Exhibit I. The presentation highlights the fact that Oceaneering did not have a working deep water hydrate remediation system and that WWCS designed and built a hydrate remediation system including a subsea separator and pump to complete the ATP job.

29.     After successfully completing the ATP job, WWCS and Oceaneering worked together on a hydrate remediation project for Marubeni Oil and Gas, with WWCS providing its Remediation System.  A copy of the Project Overview for the Marubeni Harrier Pipeline Remediation Project is attached hereto as Exhibit J, and is being filed under seal.  The Project Overview details how integral WWCS and its Remediation System were to the hydrate remediation projects. The purpose of the Marubeni Harrier Pipeline Remediation Project was to remove hydrate formation in the Harrier Pipeline, and Marubeni relied completely upon WWCS and its Remediation System to remove those hydrates – which WWCS did successfully.

30.     Oceaneering acknowledged that the WWCS Remediation System was WWCS' own "design and concept," and that WWCS' "design and concept" would be proven by the success of the ATP job – which was successful as described above and shown in Exhibit I. Exhibit J at 1.1.1.1.

31.     Shortly after the success of the Marubeni project, WWCS and Oceaneering performed one more project together. Williams Oil & Gas ("Williams") called WWCS for a

**PLAINTIFF'S ORIGINAL COMPLAINT**

hydrate remediation job. Williams had already contracted with Oceaneering, but Oceaneering experienced the same issues in its previous failed attempts to remediate hydrates and was unable to perform the job without WWCS.

32.     WWCS used the same hydrate remediation system with the subsea separator and pump proven successful on the ATP and Marubeni jobs to clear the hydrates from the pipeline for Williams.

33.     After the Williams job in 2011, Oceaneering terminated the working relationship with WWCS. Upon information and belief, Oceaneering determined it had obtained enough information to build its own system using the trade secret and confidential information WWCS provided under the NDA.

34.     Despite refusing to work with WWCS, Oceaneering still uses video footage from the 2010 ATP hydrate remediation job performed by WWCS as advertisement for Oceaneering's "success" on remediation projects. A copy of a screen shot of the video found on Oceaneering's website showing a WWCS logo on the separator is attached hereto as Exhibit K.

35.     But for WWCS disclosing the confidential and trade secret information to Oceaneering, Oceaneering would not have the capability or knowledge required to perform hydrate remediation in deep-water applications.

## WWCS Patent Applications

36.     On December 24, 2009, days after executing the NDA with Oceaneering, David Wright ("Wright") and Jeffery Dufrene ("Dufrene") filed U.S. Provisional Application No. 61/290,168 to protect WWCS' Hydrate Remediation System, including specifically the subsea separator and the use of preventative chemical injections within the remediation system to prevent hydrates from forming.

PLAINTIFF'S ORIGINAL COMPLAINT

37.    On December 24, 2010, Wright and Dufrene filed two U.S. non-provisional patent applications claiming priority to the provisional application filed on December 24, 2009. Each application was directed to specific aspects of the Remediation System:

    a.  U.S. Patent Application No. 12/978,486, now issued as U.S. Patent No. 8,413,725, describes and claims, *inter alia*, the subsea sea separator used in WWCS' Remediation System.  *See* Exhibit A.

    b.  U.S. Patent Application No. 12/978,448 ("the '448 application") is still pending and describes aspects of the entire hydrate Remediation System, specifically the subsea hydraulic positive displacement pump and its use within the hydrate Remediation System. A copy of Application No. 12/978,448 is attached hereto as Exhibit L.

38.    Wright and Dufrene assigned all rights and interest in the '725 Patent to WWCS.

39.    WWCS provided Oceaneering a copy of each application under the NDA more than a year prior to any publication of the information included in the applications. Upon information and belief, Oceaneering used this confidential information in building its remediation system, which it then used to bid against WWCS for hydrate remediation jobs.

40.    WWCS also marked all its equipment with "patent pending" while working with Oceaneering to put them and all other companies on notice of WWCS' pursuit of patent protection on the separator and remediation system.

**<u>Oceaneering's Interference with the BP Thunder Horse Project</u>**

41.    In early 2012, WWCS and BP, PLC ("BP") began discussing a multi-million dollar contract for supplying a subsea separator and pump system to perform a hydrate remediation job. The project was the Thunder Horse Restriction Project (the "THR Project").

Through an explicitly confidential relationship, WWCS provided all requested information regarding the WWCS Remediation System to BP over the course of nearly a year.

42.    BP later awarded the THR Project to Oceaneering, which submitted a bid using WWCS' confidential and trade secret information. But for WWCS' confidential and trade secret information, Oceaneering would not have a workable subsea separator and pump system for deep-water use, and therefore could not have bid against WWCS on the THR Project.

43.    Oceaneering had actual knowledge of the '725 Patent and knew or should have known that Oceaneering infringed the '725 Patent when it used a copy of the subsea separator built by WWCS.

44.    Oceaneering also knew or should have known that its bid on the THR Project, disclosure of the information necessary to be awarded the project, and attempted performance of the project constituted multiple breaches of the existing NDA, as well as the confidential relationship between WWCS and Oceaneering.

### Oceaneering's Continued Use of Confidential Information

45.    Oceaneering has, and continues to use confidential and trade secret information provided to Oceaneering by WWCS during their confidential relationship.

46.    Oceaneering has not performed any jobs "contemplated by the [NDA]" since 2011.  After the Williams job in 2011, the NDA obligated Oceaneering to cease using any and all confidential and trade secret information provided by WWCS under the NDA.

47.    Oceaneering did not stop using the information, but rather used WWCS' own information to build a remediation system to unfairly compete with WWCS and also used the WWCS designs, specifications, configurations, calculations, and drawings to bid for and receive

**PLAINTIFF'S ORIGINAL COMPLAINT**

hydrate remediation jobs. *See* Exhibit M, showing Oceaneering using WWCS' confidential information on a job in February 2012.

48.     Upon information and belief, Oceaneering began bidding on, and being awarded, hydrate remediation projects during, or shortly after, the working relationship with WWCS ended. *See* Exhibit N, Oceaneering's Oilfield Projects Group Project Track Record showing Oceaneering performing multiple hydrate remediation jobs using WWCS' technology between the time it terminated the business relationship with WWCS and February 2012.

49.     In addition to the THR Project with BP, discussed above, Oceaneering has bid against WWCS for hydrate remediation jobs for at least the following companies: BP, Plc, ENI US Operating Co., Inc. (3 jobs), Marubeni Oil & Gas USA, Inc., Deep Gulf Energy, Inc., and Murphy Oil Corp.  Oceaneering not only received the work at the exclusion of WWCS, but did so using WWCS' own technology against it. But for misappropriating WWCS' technology, Oceaneering could not have bid on these projects, and those projects would have been awarded to WWCS.

### Oceaneering and Mancini's Theft and Misappropriation Through Filing Patent Applications

50.     Oceaneering also misappropriated WWCS' confidential information to file multiple provisional patent applications containing the information provided to Oceaneering by WWCS. These applications used and disclosed WWCS' confidential information protected by the NDA and the confidential relationship between WWCS and Oceaneering.  Oceaneering employee Christopher Mancini falsely and fraudulently named himself as an inventor on each of the applications filed.  Oceaneering is vicariously liable for all acts described herein by Mancini

because Mancini misappropriated WWCS' confidential information in the course and scope of his employment with Oceaneering.

51.     Oceaneering filed these patent applications in violation of at least Paragraph 7 of the NDA, which requires that ownership of any invention developed or disclosed during the period of the NDA shall remain with the Disclosing Party, WWCS. Oceaneering further breached the confidential relationship between WWCS and Oceaneering by filing the patent application containing the confidential information. Wright is at least a co-inventor, if not the sole inventor and, as a result, owner of all patent applications filed by Oceaneering and Mancini describing and claiming aspects of the Remediation System disclosed to Oceaneering by WWCS.

52.     On April 29, 2013, Oceaneering filed an additional provisional application with the USPTO containing even more information obtained from WWCS under the NDA. A copy of U.S. Patent Application No. 61/817,245 is attached hereto as Exhibit O. Mancini is named as an inventor.

53.     From that April 29, 2013 provisional patent application, Oceaneering filed four (4) non-provisional patent applications now pending before the USPTO. All four applications have since been made publicly available. A copy of U.S. Publication Nos. 2014/0318790, 2014/0318789, 2014/0318791, and 2014/0318798 are attached hereto as Exhibits P, Q, R, and S, respectively.

54.     All four non-provisional patent applications contain the same specification, or description, of the subject matter.

55.     The patent applications contain confidential information provided by WWCS under the NDA.

56.     On February 7, 2014, Oceaneering filed another provisional application for a subsea hydraulic pump using the information provided by WWCS.  A copy of U.S. Provisional Application No. 61/762,743 is attached hereto as Exhibit T.  WWCS disclosed to Oceaneering the need for a subsea hydraulic pump, including all necessary information and know-how required to build and run the pump with a hydrate remediation system.

57.     Mancini directly communicated with WWCS during the period of the NDA. Mancini received all confidential information provided to Oceaneering by WWCS. Mancini stole this information, fraudulently claimed inventorship on the above referenced patent applications, and has now disclosed to the public what was otherwise confidential information.

58.     Also on February 7, 2014, Oceaneering and Mancini filed a non-provisional patent application that is now pending before the United States Patent and Trademark Office ("USPTO").  A copy of U.S. Application No. 14/175,543 is attached hereto as Exhibit U.  This application also contains confidential information owned by WWCS. As of August 14, 2014, this application has been published as U.S. Publication No. 2014/0224498. In filing the patent application, Mancini has used and published certain of WWCS' confidential information regarding the subsea hydraulic pump obtained under the NDA, specifically with respect to its purpose and operation in connection with a hydrate remediation system.

59.     Wright is at least the co-inventor, if not the sole inventor, of the subject matter described in the patent applications filed by Oceaneering and is the sole owner of those inventions.

60.     Oceaneering, including specifically Mancini, improperly used and has now made publicly available certain of WWCS confidential information by filing the five, now published, non-provisional patent applications. The publicly disclosed information was of significant value

to WWCS and its operations as a leader in deep water intervention, specifically hydrate remediation.

61.     Upon information and belief, Mancini and Oceaneering intentionally solicited information from WWCS with specific intent to steal, and did steal, inventions, confidential and trade secret information, and WWCS' right to obtain a patent on their rightfully owned inventions.

62.     Upon information and belief, Mancini and Oceaneering fraudulently induced WWCS into executing the NDA for the sole purpose of obtaining the information necessary to design, develop, build, and operate a successful hydrate remediation system.

63.     Upon information and belief, Oceaneering knew or should have known about Mancini's actions and either willfully ignored, or further aided and encouraged, Mancini in the theft and misappropriation of WWCS' confidential and trade secret information.

64.     Oceaneering agreed that all confidential information disclosed by WWCS during the NDA period belongs solely to WWCS, including specifically all patent rights. Oceaneering violated the NDA and filed patent applications on the confidential information provided by WWCS to Oceaneering under the NDA.

## IV.     CAUSES OF ACTION

### Count I
### Patent Infringement

65.     Plaintiff re-alleges, as if fully set forth herein, each allegation contained in the previous paragraphs.

66.     Oceaneering has, and continues to infringe one or more claims of the '725 Patent by making, using, selling, or offering for sale systems and methods covered by the claimed

inventions of the '725 Patent.  Specifically, Oceaneering is making, using, selling, or offering for sale a hydrate remediation system containing a subsea separator covered by one or more claims of the '725 Patent.

67.    In addition to, or alternatively, Oceaneering has, and continues to indirectly infringe one or more claims of the '725 Patent by inducing or contributing to the manufacture, use, sale, or offer for sale of the claimed inventions of the '725 Patent by Oceaneering's customers or potential customers in Texas, Louisiana, or elsewhere in the United States, such as BP, Plc, ENI US Operating Co., Inc., Marubeni Oil & Gas USA, Inc., Deep Gulf Energy, Inc., and Murphy Oil Corp., one or more of which have directly infringed the '725 Patent. Oceaneering's customers purchased, operated, or sought for purchase or lease the hydrate Remediation System supplied or offered by Oceaneering.

68.    On information and belief, Oceaneering's subsea separator has no substantial non-infringing uses or was supplied or provided by Oceaneering with knowledge that the same was made, adapted, configured, used or to be used so as to infringe the '725 Patent.

69.    Upon information and belief, Oceaneering's infringing activities have been willful.

70.    As a result of Oceaneering's infringing activities in direct competition with WWCS, Plaintiff has suffered irreparable damages, detriment, and harm for which a monetary award is an insufficient remedy. Additionally, as a result of the willful and deliberate nature of Oceaneering's infringing activities, Plaintiff is entitled to enhanced damages and is entitled to recover attorneys' fees and costs. 28 U.S.C. §§ 284-285.

## Count II

## Texas Common Law Misappropriation

71.     Plaintiff re-alleges, as if fully set forth herein, each allegation contained in the previous paragraphs.

72.     Plaintiff spent extensive time, labor, skill, and money to design, develop, and build the Remediation System.  Defendants have used Plaintiff's Remediation System in competition with Plaintiff, thereby getting a "free ride" because Defendants are not burdened with the development expense incurred by Plaintiff.

73.     Defendants' "free ride" on Plaintiff's extensive time, labor, skill, and money has caused a commercial damage to Plaintiff in the form of lost projects awarded to Defendants.

74.     As a result of Defendants' misappropriation, Plaintiff has suffered irreparable injury, detriment, and harm for which a monetary award is an insufficient remedy.

## Count III

## Texas Statutory Misappropriation of Trade Secrets

75.     Plaintiff re-alleges, as if fully set forth herein, each allegation contained in the previous paragraphs.

76.     Oceaneering and/or Mancini are liable for misappropriation of Plaintiff's trade secrets under the Texas Uniform Trade Secret Act, particularly Chapter 134A of the Texas Civil Practice & Remedies Code for misappropriations occurring after September 1, 2013.

77.     Oceaneering acquired trade secret information related to Plaintiff's Remediation System, specifically all know-how related to designing, developing, deploying, and operating the Remediation System, including the use of a subsea separator, subsea hydraulic pump, and

chemical injections for hydrate prevention, obtained through a confidential relationship with Plaintiff as evidenced by the signed NDA between the parties.

78.     Certain information and know-how regarding the design, development, deployment, and operation of Plaintiff's Remediation System are entitled to trade secret protection under Texas law. Plaintiff researched, designed, and developed the Remediation System at great expense. The particulars of a WWCS Remediation System are not generally known outside of Plaintiff and are not available to the general public. The design advantages of a WWCS Remediation System give Plaintiff a considerable competitive advantage over its peers who do not have access to Plaintiff's confidential and trade secret information. Plaintiff has taken reasonable steps to protect both the design of a WWCS Remediation System and the WWCS Remediation System itself, as well as other confidential and proprietary information, from disclosure to competitors, including, but not limited to, requiring the signing of a Non-Disclosure Agreement prior to disclosure of such protected information.

79.     Oceaneering has misappropriated Plaintiff's trade secrets to build certain components of its hydrate remediation system.  But for Plaintiff's trade secrets, Oceaneering would not have been able to build its system.

80.     As a result of Oceaneering's misappropriation, Plaintiff has suffered irreparable injury, detriment, and harm for which a monetary award is an insufficient remedy. In addition to equitable damages, Plaintiff is entitled to recover actual and consequential damages, including all losses suffered by Plaintiff and unjust enrichment (disgorgement) acquired by Defendants, exemplary damages, pre- and post-judgment interest, and costs. Plaintiff also seeks injunctive relief to restrain Oceaneering from continued use of information gained through misappropriation.

**PLAINTIFF'S ORIGINAL COMPLAINT**

## Count IV

## Texas Common Law Misappropriation of Trade Secrets

81.     Plaintiff re-alleges, as if fully set forth herein, each allegation contained in the previous paragraphs. Defendants are liable to Plaintiff for common law misappropriation of trade secrets for all acts occurring prior to September 1, 2013.

82.     As fully described above, Plaintiff owns certain trade secrets relating to a subsea separator, its use with chemical injections for hydrate prevention, and other trade secrets relating to the entire Hydrate Remediation System as a whole. Oceaneering used that trade secret information in violation of a confidential and contractual relationship with Plaintiff. Plaintiff has suffered, and continues to suffer injury as a result of Oceaneering's misappropriation of Plaintiff's trade secrets.

83.     As a result of Defendants' misappropriation of Plaintiff's trade secrets, Plaintiff has suffered and continues to suffer irreparable injury, detriment, and harm for which a monetary award is an insufficient remedy.

## Count V

## Louisiana Statutory Misappropriation of Trade Secrets

84.     Plaintiff re-alleges, as if fully set forth herein, each allegation contained in the previous paragraphs.

85.     Oceaneering and/or Mancini are liable for misappropriation of Plaintiff's trade secrets under the Louisiana Uniform Trade Secret Act, particularly LA.REV.STAT. § 51:1431.

86.     Oceaneering acquired trade secret information related to Plaintiff's Remediation System, specifically all know-how related to designing, developing, deploying, and operating the Remediation System, including the use of a subsea separator, subsea hydraulic pump, and

chemical injections for hydrate prevention, obtained through a confidential relationship with Plaintiff as evidenced by the signed NDA between the parties.

87.     Certain information and know-how regarding the design, development, deployment, and operation of Plaintiff's Remediation System are entitled to trade secret protection under Louisiana law. Plaintiff researched, designed, and developed the Remediation System at great expense. The particulars of a WWCS Remediation System are not generally known outside of Plaintiff and are not available to the general public. The design advantages of a WWCS Remediation System give Plaintiff a considerable competitive advantage over its peers who do not have access to Plaintiff's confidential and trade secret information. Plaintiff has taken reasonable steps to protect both the design of a WWCS Remediation System and the WWCS Remediation System itself, as well as other confidential and proprietary information, from disclosure to competitors, including, but not limited to, requiring the signing of a Non-Disclosure Agreement prior to disclosure of such protected information.

88.     Oceaneering has misappropriated Plaintiff's trade secrets to build certain components of its hydrate remediation system.  But for Plaintiff's trade secrets, Oceaneering would not have been able to build its system.

89.     As a result of Oceaneering's misappropriation, Plaintiff has suffered irreparable injury, detriment, and harm for which a monetary award is an insufficient remedy. In addition to equitable damages, Plaintiff is entitled to recover actual and consequential damages, including all losses suffered by Plaintiff and unjust enrichment (disgorgement) acquired by Defendants, exemplary damages, pre- and post-judgment interest, and costs. Plaintiff also seeks injunctive relief to restrain Oceaneering from continued use of information gained through misappropriation.

**PLAINTIFF'S ORIGINAL COMPLAINT**

## Count VI

**Breach of Contract – December 2009 Non-Disclosure Agreement**

90.     Plaintiff re-alleges, as if fully set forth herein, each allegation contained in the previous paragraphs.

91.     Oceaneering entered into a Non-Disclosure Agreement with Plaintiff to maintain the confidentiality of Plaintiff's Remediation System and method of operation.  Oceaneering agreed that it would not use the information for its own benefit without obtaining permission from Plaintiff. Plaintiff was not asked for, nor did they grant, any permission to Oceaneering to continue using Plaintiff's Remediation System.

92.     Oceaneering breached the agreement with Plaintiff to maintain the confidentiality of its information. Oceaneering breached the agreement not to use that information for its own benefit without obtaining permission from Plaintiff.

93.     Plaintiff performed all conditions precedent to enforcement of the agreement.

94.     As a result of Defendants' breach of contract, Plaintiff has suffered and continues to suffer irreparable injury, detriment, and harm for which a monetary award is an insufficient remedy.

## Count VII

**Breach of Confidential Relationship**

95.     Plaintiff re-alleges, as if fully set forth herein, each allegation contained in the previous paragraphs.

96.     Plaintiff entered a confidential relationship with Oceaneering, as evidenced by the Non-Disclosure Agreement. As a result of this confidential relationship, Plaintiff provided information about Plaintiff's hydrate remediation system and method of use. Both parties understood and agreed that the information was to be kept confidential.

**PLAINTIFF'S ORIGINAL COMPLAINT**

97.     Oceaneering has taken Plaintiff's trade secrets and confidential information and, based upon information and belief, begun to manufacture and use a hydrate remediation system to directly compete with Plaintiff.

98.     On information and belief, based on the review of the Oceaneering website, knowledge of the system, and information from a former Oceaneering employee, as well as other materials, Oceaneering designed, developed and built its hydrate remediation system based on information, know-how, drawings, and/or test results disclosed by Plaintiff to Oceaneering.

99.     As a result of Defendants' breach of confidential relationship, Plaintiff has suffered and continues to suffer irreparable injury, detriment, and harm for which a monetary award is an insufficient remedy.

### Count VIII
### Tortious Interference with Prospective Business Relations

100.     Plaintiff re-alleges, as if fully set forth herein, each allegation contained in the previous paragraphs.

101.     As described above, Plaintiff spent enormous amounts of time and resources preparing for the Thunder Horse Project for BP. Until Oceaneering's interference, BP had all but awarded the project to Plaintiff. Plaintiff was reasonable in believing that they would have entered into a contractual business relationship with BP.

102.     Oceaneering intentionally interfered with the prospective relationship between Plaintiff and BP. Oceaneering's interference was a violation of its duty of confidentiality and of its contract (NDA). Oceaneering's interference with the prospective business relationship between Plaintiff and BP proximately caused Plaintiff to lose at least one hydrate remediation project. Plaintiff suffered actual loss due to Oceaneering's interference.

**PLAINTIFF'S ORIGINAL COMPLAINT**

103.    Oceaneering is liable for the damages caused by its intentional interference with the prospective business relationship between Plaintiff and BP.

104.    Upon information and belief, Oceaneering has made knowingly false statements to additional companies while in the process of bidding against Plaintiff, furthering Oceaneering's interference with Plaintiff's prospective business relationships.

105.    As a result of Defendants' tortious interference with Plaintiff's prospective business relations, Plaintiff has suffered and continues to suffer irreparable injury, detriment, and harm for which a monetary award is an insufficient remedy.

## Count IX
### Fraudulent Inducement

106.    Plaintiff re-alleges, as if fully set forth herein, each allegation contained in the previous paragraphs.

107.    Oceaneering represented to Plaintiff that it would keep certain trade secret and proprietary information confidential. Oceaneering made this material representation knowing it was false and intended for Plaintiff to act on its representation. It was reasonable for Plaintiff to do so. Relying on Oceaneering's intentional misrepresentation, Plaintiff entered into a contract believing that they would be disclosing information under a duty of confidentiality. Plaintiff would not have entered into the contract had they known Oceaneering did not intend to bind itself to the terms. Oceaneering did not keep the information confidential, and Plaintiff was injured as a result of Oceaneering's fraudulent inducement.

**PLAINTIFF'S ORIGINAL COMPLAINT**

## Count X
### Business Disparagement

108.    Plaintiff re-alleges, as if fully set forth herein, each allegation contained in the previous paragraphs.

109.    Oceaneering published knowingly false information about Plaintiff at least to BP. This publication of information was done with malice, without privilege, and caused Plaintiff to suffer injury by economic loss.

110.    Specifically, upon information and belief, Christopher Mancini made certain statements to BP while Plaintiff was bidding on a hydrate remediation job. Mancini made knowingly false representations that the WWCS Remediation System does not work, despite Mancini being present at multiple successful remediation jobs perform by Plaintiff. Mancini's representation intended to cast doubt on the efficacy of the Plaintiff's Remediation System, and the false representation did cast doubt once that information was published to at least BP.

111.    Oceaneering and Mancini are liable for disparaging representations made against the quality and efficacy of the WWCS Remediation System, which caused actual damages to Plaintiff.

## Count XI
### Unfair Competition

112.    Plaintiff re-alleges, as if fully set forth herein, each allegation contained in the previous paragraphs.

113.    Defendants' actions are contrary to honest dealing and honest practice in industrial and commercial matters such that Defendants' actions give rise to a civil cause of action.

**PLAINTIFF'S ORIGINAL COMPLAINT**

114.    With knowledge of Defendants' contractual obligation to keep confidential certain information and trade secrets disclosed by Plaintiff, Defendants acted to eliminate the possibility of fair competition with Plaintiff by stealing, misappropriating, using, and publishing Plaintiff's competitive advantage in the market of hydrate remediation.  Defendants' actions require Plaintiff to compete against itself and its own technology, thus preventing any real possibility of fair competition.  But for Defendants' theft and misappropriation of Plaintiff's confidential and trade secret information, Defendants would not be able to compete with Plaintiff in the deep-water hydrate remediation market.

115.    Defendants also tortiously interfered with Plaintiff's business relations by making false statements to third parties about Plaintiff's hydrate remediation abilities.  Specifically, Christopher Mancini made a statement to BP that Plaintiff's remediation system did not work – a statement Mancini knew to be false at the time the statement was made.  Upon information and belief, Mancini's statement was meant to induce, and did induce, BP into making a decision not to award Plaintiff a hydrate remediation job.

116.    Furthermore, Oceaneering's improper use of Plaintiff's confidential or proprietary information gave it a head start in the relatively new market by avoiding the time and resources Plaintiff was required to spend did to develop its own remediation system.  Oceaneering's head start has caused injury to Plaintiff.

117.    As a result of Defendants' unfair competition, Plaintiff has suffered irreparable injury, detriment, and harm for which a monetary award is an insufficient remedy.

**PLAINTIFF'S ORIGINAL COMPLAINT**

## Count XII

### Exemplary Damages

118.    Plaintiff re-alleges, as if fully set forth herein, each allegation contained in the previous paragraphs.

119.    The misappropriation of trade secrets, fraud, theft and other conduct referenced herein was outrageous, malicious, and morally culpable conduct. Oceaneering and Mancini are therefore liable for exemplary damages as a result of their conduct.

## Count XIII

### Application for Injunctive Relief

120.    Plaintiff re-alleges, as if fully set forth herein, each allegation contained in the previous paragraphs.

121.    Because of Defendants' actions, Plaintiff has suffered irreparable injury for which a monetary award alone is insufficient to remedy.

122.    Plaintiff requests, following a hearing on the issue, that this Court issue a preliminary injunction against Oceaneering and Christopher Mancini preliminarily enjoining either or both from using, disclosing, or publishing any trade secrets and/or confidential information obtained from Wright's Well Control Services or David Wright under the Reciprocal Nondisclosure of Confidential & Proprietary Information Agreement, and specifically enjoining Defendants from the activities underlying any cause of action set forth in paragraphs 65 through 117, above.

123.    Oceaneering specifically agreed that "money damages might not be a sufficient remedy for any breach by it of this [NDA], and that in addition to all other remedies, the

**PLAINTIFF'S ORIGINAL COMPLAINT**

Disclosing Party [Plaintiff] shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy for any such breach." *See* Exhibit C.

124.     Plaintiff has suffered injury in losing its advantage over the competition through the unlawful disclosure and use of its confidential and trade secret information by Oceaneering and Mancini – an injury that is irreparable. A monetary award alone is insufficient to remedy the damage caused by Defendants' acts. In addition, Plaintiff is likely to succeed on the merits of the above claims given the blatant and egregious nature of the theft and continued use of confidential and trade secret information.

125.     But for a preliminary injunction against Oceaneering's use of the Plaintiff's hydrate remediation system, including a subsea separator and pump designed and developed by Plaintiff, Plaintiff will continue to suffer irreparable injury, as Plaintiff is forced to bid against itself and its own inventions on future hydrate remediation projects.

126.     Accordingly, Plaintiff requests the Court to set its request for Preliminary Injunction for a hearing and its request for a Permanent Injunction for a full trial on the merits and, after the trial or appropriate motion, issue a preliminary and permanent injunction against Defendants as requested herein.

## Count XIV
### Attorneys' Fees

127.     Plaintiff re-alleges, as if fully set forth herein, each allegation contained in the previous paragraphs.

128.     Plaintiff is entitled to an award of attorneys' fees pursuant to Tex. Civ. Practice and Remedies Code § 38.001 *et seq.* and/or 35 U.S.C. § 285.

**PLAINTIFF'S ORIGINAL COMPLAINT**

## JURY DEMAND

129.    Pursuant to Fed. R. Civ. P. 38, Plaintiff demands a trial by jury of all issues in this action that are so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Wright's Well Control Service, LLC respectfully requests that this Court enter judgment against Defendants Oceaneering International, Inc. and Christopher Mancini, individually, granting Plaintiff the following relief:

a.   a preliminary and a permanent injunction enjoining Oceaneering and Christopher Mancini from using, disclosing, or publishing any and all trade secrets and confidential information obtained from Wright's Well Control Services under the Reciprocal Nondisclosure of Confidential & Proprietary Information Agreement, and from manufacturing, using, selling, or offering for sale any device or products embodying any such confidential or trade secret information;

b.   a finding that the '725 Patent has been and continues to be infringed by Defendants;

c.   a finding that Defendants' patent infringement has been and continues to be willful;

d.   a finding that Defendants have misappropriated Plaintiff's efforts and investment in designing, developing, and building the remediation system under Texas Common Law;

e.   a finding that Defendants have misappropriated Plaintiff's trade secrets under the Texas Uniform Trade Secret Act;

f.   a finding that Defendants have misappropriated Plaintiff's trade secrets under Texas Common Law;

g.   a finding that Defendants have misappropriated Plaintiff's trade secrets under Louisiana Uniform Trade Secret Act;

**PLAINTIFF'S ORIGINAL COMPLAINT**

h.  a finding that Defendants breached the 2009 Reciprocal Nondisclosure of Confidential & Proprietary Information Agreement;

i.  a finding that Defendants breached their confidential relationship with Plaintiff;

j.  a finding that Defendants tortiously interfered with Plaintiff's prospective business relations;

k.  a finding that Defendants fraudulently induced Plaintiff into executing the Reciprocal Nondisclosure of Confidential & Proprietary Information Agreement;

l.  a finding that Defendants disparaged Plaintiff's business to third parties;

m.  a finding that Defendants have engaged and continue to engage in unfair competition;

n.  actual damages, both past and future;

o.  exemplary damages;

p.  treble damages due to Defendants' willful actions, pursuant to 35 U.S.C. § 284;

q.  attorneys' fees pursuant to Tex. Civ. Practice and Remedies Code § 38.001 *et seq.* and/or 35 U.S.C. § 285;

r.  all pre-judgment and post-judgment interest and costs including, but not limited to, all experts fees, deposition costs, and premiums for bond for preliminary injunction; and

s.  all other relief, at law and equity, to which they may be entitled.


DATED:  May 21, 2015                    RESPECTFULLY SUBMITTED


                                        */s/ CONRAD S.P. WILLIAMS, III*
                                        **WILLIAMS LAW GROUP, LLC**
                                        Conrad S.P. Williams, III (#14499)
                                        Meredith R. Durham (#33112)


**PLAINTIFF'S ORIGINAL COMPLAINT**

909 Poydras Street, Suite 1625
New Orleans, LA 70112
TEL:  (985) 876-7595
FAX:  (985) 876-7594
Duke@williamslawgroup.org
Meredith@williamslawgroup.org

And

Guy E. Matthews[1]
Texas Bar No. 13207000
Terry B. Joseph[1]
Texas Bar No. 11029500
John D. Holman[1]
Texas Bar No. 24082232
Terry L. McCutcheon[1]
Texas Bar No. 24039045
MATTHEWS, LAWSON, MCCUTCHEON, &
JOSEPH, PLLC
2000 Bering Drive, Suite 700
Houston, Texas 77057
TEL:  (713) 355-4200
FAX:  (713) 355-9689
gmatthews@matthewsfirm.com
tjoseph@matthewsfirm.com
jholman@matthewsfirm.com
tmccutcheon@matthewsfirm.com

*ATTORNEYS FOR PLAINTIFF*

---

[1] Motion for admission *pro hac vice* to the Eastern District of Louisiana to be submitted upon the filing of the Complaint.

**PLAINTIFF'S ORIGINAL COMPLAINT**