UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WRIGHT'S WELL CONTROL                          CIVIL ACTION
SERVICES, LLC

VERSUS                                          NO. 15-1720

OCEANEERING INTERNATIONAL,                      SECTION "R" (3)
INC.


## ORDER AND REASONS

Before the Court are defendant Oceaneering International, Inc.'s two motions for partial summary judgment on plaintiff Wright's Well Control Services, LLC's various Texas and Louisiana law claims.[1]  For the following reasons, the Court grants Oceaneering's first motion in part,[2] and grants its second motion.[3]


## I.    BACKGROUND

The facts and allegations that follow are limited to what is relevant to the two motions before the Court.[4]  Plaintiff Wright's Well Control Services,

---

[1]    R. Docs. 172, 182.
[2]    R. Doc. 172.
[3]    R. Doc. 182.
[4]    A more in-depth discussion of the facts underlying this dispute can be found in the Court's November 16, 2015 Order.  *See generally* R. Doc. 56.  A more extensive discussion of the deep-sea technology and associated

LLC ("WWCS") and Defendant Oceaneering International, Inc. ("Oceaneering") both provide hydrate remediation services for the oil and gas industry.[5] The dispute concerns a technological system that WWCS developed for removing hydrates from subsea, deepwater pipelines.[6]

WWCS alleges that by the end of 2009 it developed a "hydrate remediation system" that provided a faster, safer, and more cost-effective way to clear hydrates in deepwater environments.[7] It further alleges that Oceaneering and WWCS worked together on at least two hydrate remediation projects in 2009 and 2010, the ATP job and the Marubeni Job.[8] WWCS contends that, while working together on these jobs, Oceaneering stole WWCS trade secrets related to its hydrate remediation system to develop Oceaneering's own hydrate remediation system, the "Flowline Remediation System" ("FRS"). Oceaneering asserts that at some point between 2009 and 2011, Oceaneering independently built its FRS without

---

patents at issue can be found in the Court's February 13, 2017 Order. *See generally* R. Doc. 141.

[5] WWCS also sued Christopher Mancini, an Oceaneering employee. On April 10, 2017, the Court granted WWCS's motion to voluntarily dismiss its claims against Mancini with prejudice. R. Doc. 170.

[6] According to WWCS, a hydrate is an ice-like solid that forms when water becomes mixed with oil and/or gas at high pressure and low temperature. R. Doc. 147 at 3. "Hydrate plugs" can cause a pipeline to become blocked, resulting in a loss of production. *Id.* at 3-4.

[7] *Id.* at 4-6.

[8] R. Doc. 182-2 at 3-9.

trade secrets from WWCS, and started to use its FRS in competition with WWCS's system.[9]

On May 21, 2015, WWCS filed its initial complaint against Oceaneering, pleading patent infringement as well as various claims under Texas and Louisiana state law.[10] On November 16, 2015, the Court dismissed WWCS's breach of contract claim with prejudice to the extent it that rested on information in WWCS's patent applications or on conduct that occurred after December 11, 2012, and dismissed plaintiff's statutory trade secret misappropriation claim under the Texas Uniform Trade Secrets Act.[11] After plaintiff filed a second and third amended complaint, Oceaneering moved to dismiss plaintiff's federal patent infringement claims. On February 13, 2017, the Court granted Oceaneering's motion and dismissed WWCS's patent claims, but without prejudice and with leave to amend.[12]

On February 27, 2017, WWCS filed its fourth amended complaint, which is the operative complaint.[13] The complaint asserts patent infringement claims, as well as claims for Texas common law misappropriation, Texas common law misappropriation of trade secrets,

---

[9]   R. Doc. 182-1 at 6.
[10]  R. Doc. 1.
[11]  R. Doc. 56 at 42.
[12]  R. Doc. 141 at 21.
[13]  R. Doc. 147.

Louisiana statutory misappropriation of trade secrets under the Louisiana Uniform Trade Secrets Act ("LUTSA"), and Texas common law breach of contract, breach of confidential relationship, tortious interference with prospective business relations, fraudulent inducement, business disparagement, and unfair competition.[14]

Oceaneering now moves for partial summary judgment on certain of these claims. More specifically, Oceaneering argues in its first motion for summary judgment that WWCS's Texas law business disparagement, unfair competition, common law misappropriation, breach of confidential relationship, and tortious interference with prospective business relations claims are barred by the applicable statutes of limitations.[15] Its second motion argues that WWCS's Texas common law misappropriation of trade secrets and Louisiana statutory misappropriation of trade secrets claims are also time-barred.[16] WWCS filed responses in opposition,[17] and Oceaneering replied.[18]

---

[14] *Id.* at 36-46 ¶¶ 89-139.
[15] R. Doc. 172. This motion was filed on April 17, 2017.
[16] R. Doc. 182. This motion was filed on April 20, 2017.
[17] R. Docs. 195, 196.
[18] R. Docs. 203, 205.

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went

uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g.*, *id.*; *Little*, 37 F.3d at 1075 ("Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (quoting *Celotex*, 477 U.S. at 322)).

## III. DISCUSSION

In its motions for partial summary judgment, Oceaneering asserts that WWCS's claims are barred by the applicable statutes of limitations. Oceaneering relies primarily on the January and February 2017 deposition testimony of David Wright, WWCS's sole owner and designated corporate representative under Federal Rule of Civil Procedure 30(b)(6),[19] as well as copies of emails that it attached to its motions. WWCS disputes when each claim accrued, *i.e.*, when the limitations period actually began, and asserts that the "Texas discovery rule" delayed the accrual of the challenged claims so that they were all filed within the applicable limitations period.[20] Accordingly, whether Oceaneering is entitled summary judgment on each claim depends on the limitations period and the accrual date. The Court will first address WWCS's claim for business disparagement, because it is the only claim unrelated to the allegations of misappropriation of information.

### A. Texas Law Business Disparagement

At Wright's January deposition, he testified that Christopher Mancini, an Oceaneering employee, made disparaging statements about WWCS.[21] More specifically, Wright testified that Mancini called WWCS "an unsafe

---

19      R. Doc. 182-13 at 4.
20      R. Doc. 195 at 7-8; R. Doc. 196 at 8, 12.
21      R. Doc. 172-2 at 2.

company to work for—or work with" because its equipment had failed.[22]
Wright testified that he learned of Mancini's statement in 2011 or 2012, and
that he learned of it because other people told Wright what Mancini said.[23]
It is not clear from the record when Mancini actually made the allegedly
disparaging statement. Wright further testified that Mancini was the only
person Wright "heard" say WWCS was unsafe, and that he could not
remember any other disparaging statement made by anyone else with
Oceaneering.[24]

WWCS alleges that Oceaneering's disparagement caused WWCS to
suffer "economic loss."[25] Under Texas law, business disparagement has a
two-year limitations period if the injury alleged is direct pecuniary loss
rather than personal loss in reputation. *See Sting Soccer Operations Grp.
LP v. JP Morgan Chase Bank, N.A.*, No. 15-127, 2016 WL 3917640, at *11
(E.D. Tex. July 20, 2016) (citations omitted); *Dwyer v. Sabine Min. Co.*, 890
S.W.2d 140, 142 (Tex. App. 1994) (citing Tex. Civ. Prac. & Rem. Code §
16.003). The Court need not address whether WWCS's business
disparagement claim accrued when Mancini made the allegedly disparaging

---

[22]    *Id.* at 2-3.
[23]    *Id.* at 4.
[24]    *Id.* at 6-7.
[25]    R. Doc. 147 at 44 ¶ 131.

statement or when WWCS became aware of it later on, because under either date the claim is time-barred. Wright testified that he became aware of the disparaging statement in either 2011 or 2012. Even assuming that Wright became aware on December 31, 2012, the limitations period would expire on December 31, 2014. As WWCS did not file its initial complaint until May of 2015, WWCS's business disparagement claim is time-barred. *See Sefton v. Pathos*, No. 00-314, 2002 WL 356518, at *7 (N.D. Tex. Feb. 28, 2002) (granting summary judgment on business disparagement claim because claim was time-barred); *Dickson Constr. Inc. v. Fid. & Deposit Co. of Md.*, 960 S.W.2d 845, 850 (Tex. App. 1997) ("Dickson discovered F & D's sole disparaging comment in January 1993 almost immediately after it was made, more than two years before it filed suit and past the expiration of the two-year limitations period.").

WWCS's arguments to the contrary are meritless and do not create an issue of fact as to whether the business disparagement claim based on Mancini's comments is time-barred. First, WWCS argues that the discovery rule applies and delays the start of the limitation period. But the discovery rule does not extend the limitations period when the plaintiff has actual knowledge of the defendant's alleged wrongdoing.[26] *See, e.g., Exxon Corp.*

---

[26] The Court will explain the discovery rule below.

*v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 203 (Tex. 2011) (court did not need to address impact of discovery rule on limitations period because plaintiffs had actual knowledge of alleged wrongful actions more than two years before they filed); *see also Pickaree v. Eli Lily Pharm. Co.*, No. 14-3481, 2015 WL 1800481, at *2-3 (S.D. Tex. Apr. 16, 2015) (discovery rule did not apply to extend limitations period when plaintiff had actual knowledge of her claim).

Second, WWCS asserts that Oceaneering's "evidence does not prohibit finding other instances of disparagement that occurred" after 2012, and points out that Oceaneering has worked on "many projects" within the two-year statute of limitations.[27] But evidence of Oceaneering's work on a project is not evidence of disparagement. That Oceaneering worked on a project, without more, does not create a genuine issue of material fact as to another claim for business disparagement or as to whether WWCS's business disparagement claim based on Mancini's statement is time-barred. Accordingly, Oceaneering is entitled summary judgment on WWCS's claim that Oceaneering disparaged WWCS by calling it an unsafe company.[28]

---

[27]     R. Doc. 195 at 11-12.

[28]     WWCS's response in opposition mentions unspecified Oceaneering internal memos that are not in the record, as well as a February 2013 email chain between Oceaneering employees, as evidence of other disparaging statements. In the email chain, one employee asks another,

10

## B. Tortious Interference with Prospective Business Relations

Under Texas law, tortious interference with prospective business relations has a two-year limitations period. *First Nat'l Bank of Eagle Pass v. Levine*, 721 S.W.2d 287, 288-89 (Tex. 1986). The claim accrues when "existing negotiations, which are reasonably certain of resulting in a contract, are interfered with such that the negotiations terminate and harm to the plaintiff results." *Hill v. Heritage Res.*, 964 S.W.2d 89, 116 (Tex. App. 1997). WWCS's complaint alleges that Oceaneering interfered with the relationship between BP and WWCS regarding the Thunder Horse project. Oceaneering makes no argument and submits no evidence on when this interference occurred, but WWCS submits the July 11, 2013 BP Letter of Regret informing WWCS that it did not win the Thunder Horse project.[29] As it is undisputed that the negotiations with BP terminated in July 2013, WWCS timely filed its

---

"[a]re you referring to Han's phone call to someone at DTS requesting that DTS reciprocate for our telling BP that we would only use DTS FRS on our vessel for the upcoming Thunderhorse [sic] Hydrate Remediation job when they requested Wright Well Hydrate Pumps?" **[SEALED R. Doc. 195-14 at 3.]** This is not evidence of business disparagement, which requires false or disparaging information, because it is not apparent how the statement is false or disparaging. *See Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003).

[29] R. Doc. 195-1 at 2.

tortious interference with business relations claim in May 2015, and Oceaneering is not entitled summary judgment on this claim.

## C. The Texas Misappropriation-Related Claims, the Discovery Rule, and Wright's Knowledge

Oceaneering also seeks summary judgment on the Texas law misappropriation-related claims: common law misappropriation, common law misappropriation of trade secrets, breach of confidential relationship, and unfair competition. According to WWCS's complaint, the underlying basis for all of these claims is the theft or misappropriation of WWCS's trade secrets and information related to WWCS's hydrate remediation system.[30] Each claim has either a two-year or three-year limitations period. *See R. Ready Prods., Inc. v. Cantrell*, 85 F. Supp. 2d 672, 693 (S.D. Tex. 2000) ("Claims of unfair competition through misappropriation of trade secrets . . . are subject to a two year statute of limitations); *Reaux Med. Indus., LLC v. Stryker Corp.*, No. 09-1582, 2012 WL 612534, at *2 (N.D. Tex. Feb. 27, 2012)

---

[30]    R. Doc. 147 at 38-46, ¶¶ 99-139. The allegations under WWCS's unfair competition claim clearly implicate misappropriation of trade secrets. *See* R. Doc. 147 at 45 ¶ 136 ("But for Defendants' theft and misappropriation of Plaintiff's confidential and trade secret information, Defendants would not be able to compete with Plaintiff in the deep-water hydrate remediation market."). WWCS's breach of confidential relationship claim is similarly based on Oceaneering's alleged theft of WWCS's trade secrets. *See id.* at 42 ¶¶ 118-19 ("As a result of this confidential relationship, Plaintiff provided information about Plaintiff's hydrate remediation system . . . . Oceaneering has taken Plaintiff's trade secrets and confidential information.").

("Under Texas law, common law misappropriation has a two-year statute of limitations, while misappropriation of trade secrets is subject to a three-year period."); *Crutcher-Rolfs-Cummings, Inc. v. Ballard*, 540 S.W.2d 380, 387 (Tex. App. 1976) (recognizing two-year limitations period for breach of confidential relationship claims).[31]

Although these claims have different limitations periods, each claim accrues either when the misappropriation occurred or when the misappropriated secret is used. *See R. Ready Productions*, 85 F. Supp. 2d at 693 ("An unfair competition claim for misappropriation of trade secrets accrues and the limitations period commences when the trade secret allegedly misappropriated is actually used."); *Stryker Corp.*, 2012 WL 612534, at *2 ("[A] claim for common law misappropriation begins to accrue when the alleged misappropriation occurred."); *Crutcher-Rolfs-Cummings*, 540 S.W.2d at 387 (finding breach of confidential relationship claim accrued

---

[31] WWCS is incorrect in asserting that the statute of limitations for breach of confidential relationship is four years. R. Doc. 195 at 16. The case WWCS relies on, *Versata Software Inc. v. Internet Brands, Inc.*, did not address the limitations period for a breach of confidential relationship claim, but rather the limitations period for a breach of contract claim where the contract at issue was a confidentiality agreement. No. 08-313, 2012 WL 588790, at *5 (E.D. Tex. Feb. 22, 2012) (applying breach of contract limitations period to "counterclaim for breach of the 1997 Confidentiality Agreement"). And while a breach of contract may also give rise to a breach of confidential relationship, they are separate claims. *See Hyde Corp. v. Huffines*, 314 S.W.2d 764, 769-70 (Tex. 1958).

at time breach first occurred); *Comput. Assocs. Int'l., Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996) ("A cause of action for misappropriation of trade secrets accrues when the trade secret is actually used."). "Use" of a trade secret means "commercial use, by which a person seeks to profit from the use of the secret." *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 450 (5th Cir. 2007). This includes "marketing goods that embody the trade secret, employing the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate research or development, or soliciting customers through the use of information that is a trade secret." *Id.* at 451 (quoting Restatement (Third) of Unfair Competition §40).

Accordingly, the limitations period began for each of the above claims either when Oceaneering allegedly misappropriated WWCS's trade secrets or when Oceaneering used the misappropriated trade secrets by producing its FRS. WWCS argues that the Texas discovery rule applies to each of the above claims and delays the start of each applicable limitations period. The discovery rule "operates to defer accrual of a cause of action until the plaintiff knows or, by exercising reasonable diligence, should have known of the facts giving rise to the claim." *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001). But the rule is "a very limited exception to statutes of limitations," and should be used "only when the nature of plaintiff's injury is

both inherently undiscoverable and objectively verifiable." *Id.* An injury is inherently undiscoverable if it is, "by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence." *Id.* at 734-35 (citing *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996).

Whether someone, by exercising reasonable diligence, should have known of the facts giving rise to his or her claim is generally a question of fact for the jury. *See, e.g.*, *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 722 (Tex. 2016). But summary judgment is appropriate if there is no genuine issue of material fact as to "when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the nature of its injury." *Vanderpool v. Vanderpool*, 442 S.W.3d 756, 761 (Tex. App. 2014); *see also Childs v. Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998).

Oceaneering disputes the discovery rule's application to WWCS's claims. Because Texas courts apply the discovery rule to trade-secret misappropriation claims, and because all of the above claims arise out of the alleged misappropriation, the Court will apply the rule to these claims. *See, e.g.*, *Berry-Helfand*, 491 S.W.3d 699, 722 ("Because the discovery rule applies to trade-secret misappropriation claims, however, the limitations period did not begin to run until [plaintiff] knew or should have known of facts that in the exercise of reasonable diligence would have led to discovery

of the misappropriation." (citations omitted)); *Sisoian v. Int'l Bus. Machines Corp.*, 2014 WL 4161577, at *4-5 (W.D. Tex. Aug. 18, 2014) (applying discovery rule to other claims arising out of theft of trade secrets). Accordingly, the Court will examine when WWCS either knew or should have known the facts giving rise to its claims.

Oceaneering argues that WWCS either knew or should have known of its claims by January 2012.[32] In January of 2012, Wright had a meeting with Shell employees. Shortly after the meeting, Wright emailed his wife (also a WWCS employee) "Oceaneering stole some info from us on hydrates. We may have to lower our rates to compete with them."[33] When asked about the email at his deposition, Wright testified that he believed Shell employee Jim McAllister (previously an employee of Oceaneering) told him that Oceaneering had a deepsea skid that had a subsea separator.[34] Wright testified that this conversation prompted him to send the email to his wife.[35] Wright further testified that when he mentioned possibly lowering WWCS's rates to compete, he meant that WWCS may have to lower its rate for hydrate remediation because he now believed that Oceaneering had a remediation

---

[32] R. Doc. 172-1 at 15-17; R. Doc. 182-1 at 10-14.
[33] R. Doc. 172-3 at 2.
[34] R. Doc. 172-4 at 8.
[35] *Id.* at 10.

16

system that possessed subsea separation.[36]  He also testified that before he spoke to McAllister, he believed WWCS "didn't have any competitors" for hydrate remediation.[37]

The January email and Wright's deposition testimony related to that email establish that Wright should have known of facts giving rise to WWCS's claims by the end of January 2012.  As the Texas Supreme Court has recognized, once a plaintiff has been put on notice of the "alleged harm or injury-causing actions, the claimant must exercise reasonable diligence to investigate the suspected harm and file suit, if at all, *within the limitations period*." *Emerald Oil & Gas*, 348 S.W.3d at 207 (citations omitted).  This knowledge "initiates the accrual of the cause of action . . . , even if the claimant does not know the specific cause of the injury or the full extent of it." *Id.* at 209; *see also Gonzales v. Sw. Olshan Found. Repair Co., LLC*, 400 S.W.3d 52, 58 (Tex. 2013).  The evidence in the record reveals Wright's knowledge that Oceaneering had some form of subsea separation technology and was competing against WWCS by January 2012.  Based on this knowledge, Wright believed that Oceaneering stole "some info on hydrates" from WWCS.  Wright's knowledge of Oceaneering's subsea separation

---

[36]      *Id.* at 8-10.
[37]      *Id.* at 9.

technology and his belief that Oceaneering stole this technology from WWCS are "facts that in the exercise of reasonable diligence would lead to the discovery" that Oceaneering misappropriated WWCS's information. *Berry-Helfand*, 491 S.W.3d at 724.

WWCS's arguments to the contrary do not alter the conclusion that WWCS was put on notice of the alleged misappropriation by January 2012.[38] First, WWCS attempts to weaken the evidentiary value of the emails and Wright's deposition testimony by arguing—without citation to legal authority or caselaw—that the emails and Wright's deposition testimony contain inadmissible hearsay.[39] This argument is meritless. Wright's statements in the emails are not hearsay because they are offered against WWCS, and Wright was both WWCS's agent and employee. *See* Fed. R. Evid. 801(d)(2)(D) (statement offered against opposing party and made by party's agent or employee on matter within scope of that relationship is not hearsay). Wright's testimony regarding what the Shell employee told him is not hearsay because it is not offered for the truth of the matter asserted. *See id.* 801(c)(2) (hearsay rule only applies to statements offered "to prove the truth

---

[38] WWCS also suggests that some of its claims are continuing torts, but makes no argument and cites no caselaw explaining which, if any, actually are continuing.

[39] *See* R. Doc. 196 at 2, 5.

of the matter asserted"). Instead, Oceaneering relies on this testimony to establish Wright's knowledge of Oceaneering's subsea separator technology. *See Mercato Elisio, LLC v. Deveney*, No. 15-563, 2016 WL 4181021, at *4 (E.D. La. Aug. 8, 2016) (citing *United States v. Obregon-Reyes*, 507 F. App'x 413, 424 (5th Cir. 2013) ("A statement that D made a statement to X is not subject to attack as hearsay when its purpose is to establish the state of mind thereby induced in X, such as . . . having knowledge.")). Accordingly, the email and Wright's deposition testimony are both admissible.

Relatedly, WWCS argues that Wright's deposition testimony should be discounted because it was "premature" given the status of discovery.[40] WWCS instead submits Wright's May 2, 2017 Declaration in an attempt to cast doubt on Wright's deposition testimony.[41] Wright attests in the declaration that he did not have "actual knowledge of the potential legal issues arising from Oceaneering's theft of my trade secrets and technology" until WWCS lost the BP Thunder Horse project to Oceaneering in July of 2013.[42]

WWCS cannot use Wright's declaration to erase his earlier deposition testimony. Under Fifth Circuit law, "in situations where the non-movant in

---

[40] R. Doc. 195 at 6; R. Doc. 196 at 4.
[41] R. Doc. 195-3; R. Doc. 196-1.
[42] R. Doc. 195-3 at 2-3; R. Doc. 196-1 at 2-3.

a motion for summary judgment submits an affidavit which directly contradicts an earlier deposition and the movant has relied upon and based its motion on the prior deposition, courts may disregard the later affidavit." *Hyde v. Stanley Tools*, 107 F. Supp. 2d 992, 993 (E.D. La. 2000) (citing *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996)). And while a contradictory or inconsistent affidavit can "be admitted if it is accompanied by a reasonable explanation," *id.*, WWCS's attempted explanation does not hold water. Even assuming Oceaneering had yet to turn over discoverable information by the dates of Wright's depositions, the information sought from Wright and relied on by Oceaneering was based on Wright's personal knowledge and pertained to what he knew and believed in the past. None of the information sought by WWCS in discovery would impact what Wright knew and believed in 2012. Nor does WWCS argue that Wright was confused or made a mistake during his deposition. *Cf. Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir. 1980). Accordingly, to the extent that information in Wright's declaration contradicts or is inconsistent with his deposition testimony, the Court will disregard the declaration.

As explained above, Texas common law misappropriation, unfair competition through misappropriation of trade secrets, and breach of

confidential relationship claims all have two-year limitations periods. Texas common law misappropriation of trade secrets has a three year statute of limitations from the date the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. *See* Tex. Civ. Prac. & Rem. Code § 16.010(a). All of these claims accrued by January 2012, yet WWCS filed suit more than three years later, in May 2015. Accordingly, WWCS's common law misappropriation, unfair competition, breach of confidential relationship, and common law misappropriation of trade secrets claims are time-barred. Oceaneering is entitled summary judgment on these claims.

### D. Louisiana Statutory Misappropriation of Trade Secrets Claim

This leaves WWCS's Louisiana Uniform Trade Secrets Act claim. Under LUTSA, an "action for misappropriation must be bought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." La. Stat. Ann. § 51:1436. Because this claim has a three-year limitations period, Oceaneering is entitled summary judgment on this claim for the same reason it is entitled summary judgment on WWCS's Texas misappropriation-related claims.

## IV.  CONCLUSION

For the foregoing reasons, Oceaneering's first motion for summary judgment is GRANTED IN PART and DENIED IN PART, and Oceaneering's second motion is GRANTED.  WWCS's claims for business disparagement, common law misappropriation, unfair competition, breach of confidential relationship, Texas common law misappropriation of trade secrets, and Louisiana misappropriation of trade secrets are DISMISSED.

New Orleans, Louisiana, this __23rd__ day of August, 2017.

_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE