UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| WRIGHT'S WELL CONTROL SERVICES, LLC | CIVIL ACTION |
|---|---|
| VERSUS | NO. 15-1720 |
| OCEANEERING INTERNATIONAL, INC. | SECTION "R" (3) |

### ORDER AND REASONS

Before the Court is defendant Oceaneering International, Inc.'s motion for partial summary judgment on plaintiff Wright's Well Control Services, LLC's patent infringement claim related to the 9,435,185 patent.[1] For the following reasons, the Court grants Oceaneering's motion.

## I. BACKGROUND

The facts that follow are limited to what is relevant to the motion before the Court.[2] Plaintiff Wright's Well Control Services, LLC ("WWCS") and defendant Oceaneering International, Inc. ("Oceaneering") both provide

---

1  R. Doc. 210.
2  A more in-depth discussion of the facts underlying this dispute can be found in the Court's November 16, 2015 Order. *See generally* R. Doc. 56. A more extensive discussion of the deep-sea technology and associated patents at issue can be found in the Court's February 13, 2017 Order. *See generally* R. Doc. 141.

hydrate remediation services for the oil and gas industry. This dispute concerns a technological system that WWCS developed for removing hydrates from subsea, deepwater pipelines.[3]

On December 24, 2010, David Wright and Jeffery Dufrene filed two U.S. non-provisional patent applications, each of which was directed to specific aspects of WWCS's remediation system.[4] According to WWCS, U.S. Patent Application No. 12/978,486, now issued as U.S. Patent No. 8,413,725 (the '725 Patent), describes and claims the subsea separator used in WWCS's remediation system.[5] Application No. 12/978,448, now issued as U.S. Patent No. 9,435,185 (the '185 Patent), describes aspects of the entire remediation system, focusing specifically on the system's use of a subsea hydraulic positive displacement pump.[6] The '185 Patent issued on September 6, 2016.[7]

The '185 Patent contains thirteen claims, three independent and 10 dependent.[8] Claim 1, the main independent claim, is a method of recovering

---

[3] According to WWCS, a hydrate is an ice-like solid that forms when water becomes mixed with oil and/or gas at high pressure and low temperature. R. Doc. 147 at 3. "Hydrate plugs" can cause a pipeline to become blocked, resulting in a loss of production. *Id.* at 3-4.
[4] *Id.* at 13 ¶ 44.
[5] *Id.*
[6] *Id.* According to WWCS, Wright and Dufrene assigned all rights and interests in both the '725 and the '185 Patents to WWCS, and WWCS is the owner of both Patents. *Id.* ¶ 45.
[7] *See* R. Doc. 147-20 at 2.
[8] *Id.* at 22-23.

a pipeline fluid from a source located in a subsea environment by connecting a fluid-powered motor and a pump to the source of the fluid.[9] Claims 4 and 9, the other two independent claims, are a method for hydrate remediation and fluid recovery from a subsea location, and a method for acting on or removing a blockage from a pipeline fluid in a subsea environment, respectively.[10] WWCS alleges that Oceaneering's Flowline Remediation System infringes on Claims 4 and 9 of the '185 Patent.[11] Specifically, WWCS alleges that "Oceaneering has offered to use its Flowline Remediation System, performing each and every step of at least Claims 4 and 9, on a hydrate remediation job for at least W & T Offshore since September 6, 2016."[12]

Oceaneering now moves for partial summary judgment on WWCS's claim for infringement of the '185 Patent. Oceaneering argues that there is no evidence Oceaneering either made, used, offered to sell, or sold its Flowline Remediation System since the '185 Patent issued on September 6, 2016.[13] *See* 35 U.S.C. § 271(a) ("Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented

---

[9] *Id.* at 22.
[10] *Id.* at 22-23.
[11] R. Doc. 147 at 30 ¶ 86.
[12] *Id.* at 37 ¶ 94.
[13] R. Doc. 210-1 at 8-9.

3

invention, within the United States . . . any patented invention during the term of the patent therefor, infringes the patent."). In response, WWCS disputes whether Oceaneering has offered to sell its Flowline Remediation System.[14] WWCS points to the deposition of Oceaneering employee Chris Dyer, who testified that Oceaneering has included the use of its Flowline Remediation Systems in project bids since September 2016.[15] In its reply, Oceaneering argues that an offer to sell the Flowline Remediation System cannot give rise to patent infringement because method claims, like Claims 4 and 9 of the '185 Patent, can be infringed only by actual use.[16]

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta &*

---

[14] R. Doc. 229 at 1; **[SEALED R. Doc. 229-1 at 4.]**
[15] R. Doc. 229 at 1.
[16] R. Doc. 233 at 4-5.

4

*Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by

merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g.*, *id.*; *Little*, 37 F.3d at 1075 ("Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (quoting *Celotex*, 477 U.S. at 322)).

### III. DISCUSSION

In this motion for partial summary judgment, Oceaneering argues that WWCS's claim for infringement of the '185 Patent fails as a matter of law. To prove direct patent infringement, WWCS must show that Oceaneering either made, used, offered to sell, or sold WWCS's patented invention after the patent issued. *See* 35 U.S.C. § 271(a). The parties dispute whether Oceaneering has offered to sell the methods described in Claims 4 and 9 of

the '185 Patent.[17] But Oceaneering contends that this dispute is immaterial because method claims can be infringed only by use, not by an offer to sell.[18] *See NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1318-21 (Fed. Cir. 2005). Oceaneering further argues that because WWCS cannot establish direct infringement, it also cannot establish indirect infringement. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1331 (Fed. Cir. 2016).

Oceaneering's argument that method claims can be infringed only by use primarily relies on the Federal Circuit's decision in *NTP*. The court in *NTP* addressed whether the defendant could be liable for infringing on plaintiff's method claim even though one step of the method was performed outside the United States. 418 F.3d at 1313-14. After holding that "a process cannot be used 'within' the United States as required by section 271(a) unless each of the steps is performed within this country," the court turned to "whether a sale of a claimed method can occur in the United States, even though the contemplated performance of that method would not be wholly within the United States." *Id.* at 1318.

---

[17]　*See* R. Doc. 210-3 at 2 ¶ 6; **[SEALED R. Doc. 229-1 at 4.]**
[18]　R. Doc. 233 at 1.

The court first noted the linguistic difficulty of applying the concept of a sale "to a method claim consisting of a series of acts." *Id.* at 1319; *see also id.* ("It is difficult to envision what property is transferred merely by one party performing the steps of a method claim in exchange for payment by another party. Moreover, performance of a method does not necessarily require anything that is capable of being transferred."). The court then examined the legislative history of § 271(a), which "indicate[d] Congress's understanding that method claims could only be directly infringed by use." *Id.* at 1320. For example, when Congress added "offers to sell" as a form of infringement in § 271(a), a Senate report explained: "The list of exclusive rights granted to patent owners is expanded to preclude others from offering to sell or importing products covered by a U.S. patent or offering to sell the *products* of patented processes." S. Rep. 103-412, at 230 (1994) (emphasis added). Earlier congressional reports reveal Congress's view that selling methods or processes does not constitute infringement. *See* S. Rep. No. 100-83, at 30 (1987) ("Under our current patent laws, a patent on a process gives the patentholder the right to exclude others from using that process in the United States without authorization from the patentholder. The other two standard aspects of the patent right—the exclusive right to make or sell the invention—are not directly applicable to a patented process."); H.R. Rep. No.

99-807, at 5 (1986) ("With respect to process patents, courts have reasoned that the only act of infringement is the act of making through the use of a patented process . . . .").

Notwithstanding this analysis, the *NTP* court resolved the issue on narrower grounds. *Id.* at 1320-21 ("We need not and do not hold that method claims may not be infringed under the 'sells' and 'offers to sell' prongs of section 271(a)."). In *Ricoh Co, Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1335 (Fed Cir. 2008), the Federal Circuit again avoided the question whether "a party who sells or offers to sell a patented process infringes the patent." *See id.* (finding that patented "software is not itself a sequence of actions, but rather . . . a set of instructions that directs hardware to perform a sequence of actions"). But the *Ricoh* court did "agree with the reasoning of *NTP* that the application of the concept of a sale or offer of sale to the actual carrying out of a sequence of actions is ambiguous." *Id.* Neither the Federal Circuit nor the Supreme Court has ever recognized that one may infringe a method claim by selling or offering to sell a service that performs the method.

Relying on *NTP*, district courts have generally held that a method claim may be infringed only by use. *See, e.g.*, *Isis Pharm., Inc. v. Santaris Pharma A/S Corp.*, No. 3:11-CV-2214-GPC-KSC, 2014 WL 2531973, at *3-4 (S.D. Cal. June 4, 2014); *W.L. Gore & Assocs. v. Medtronic, Inc.*, 874 F. Supp. 2d 526,

9

544-45 (E.D. Va. 2012); *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 695 F. Supp. 2d 680, 688 (S.D. Ohio 2010); *Ricoh Co., Ltd. v. Quanta Comput., Inc.*, 579 F. Supp. 2d 1110, 1123 (W.D. Wis. 2007), *aff'd in part and vacated in part*, 550 F.3d 1325 (Fed. Cir. 2008); *Transocean Offshore Deepwater Drilling, Inc. v. GlobalSantaFe Corp.*, 400 F. Supp. 2d 998, 1011-12 (S.D. Tex. 2005). Thus, the balance of caselaw supports Oceaneering's position.

But, as WWCS notes, a few district courts have taken the opposite view. *See, e.g.*, *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 667 F. Supp. 2d 29, 36-37 (D.D.C. 2009); *see also WesternGeco L.L.C. v. ION Geophysical Corp.*, 869 F. Supp. 2d 793, 798-99 (S.D. Tex. 2012) (citing *CLS Bank*), *rev'd in part on reconsideration*, 2012 WL 1708852 (S.D. Tex. May 15, 2012); *Optigen, LLC v. Int'l Genetics, Inc.*, 777 F. Supp. 2d 390, 403 (N.D.N.Y. 2011) (citing *CLS Bank*). *CLS Bank* relied in part on the Supreme Court's holding in *Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617 (2008), that method claims are exhaustible. *See CLS Bank*, 667 F. Supp. 2d at 37. In *Quanta*, the Court noted that although "a patented method may not be sold in the same way as an article or device, . . . method patents [are] exhausted by the sale of an item that embodied the method." 553 U.S. at 628-29.

This Court finds the reasoning in *NTP* persuasive. The Supreme Court's holding in *Quanta*, upon which *CLS Bank* relied, is not to the contrary. First, *Quanta* addressed exhaustion rather than infringement. *See Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1362-63 (Fed. Cir. 2009) (declining to apply *Quanta* in the infringement context). Second, the Court acknowledged that "a patented method may not be sold in the same way as an article or device." *Quanta*, 553 U.S. at 628. Third, the Court stated that "embodiments of patented methods," rather than methods themselves, may be sold for purposes of exhaustion. *Id.* The Court cited two cases where these embodiments were the products produced under the patents. *Ethyl Gasoline Corp. v. United States*, 309 U.S. 436, 446, 457 (1940); *United States v. Univis Lens Co.*, 316 U.S. 241, 248-51 (1942). Here, by contrast, Oceaneering offered to sell the service, i.e., the method, of the infringing Flowline Remediation System and not products embodying the method. *Cf. Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed Cir. 1993) (holding that "the sale of equipment to perform a process is not a direct infringement of the process within the meaning of section 271(a)"). For these reasons, *Quanta*—and by extension *CLS Bank*—do not undermine the Federal Circuit's reasoning in *NTP*.

Furthermore, limiting infringement of method claims to the use, rather than sale, of such methods accords with other Federal Circuit precedent. For example, the Federal Circuit has stated that where "the asserted patent claims are method claims, the sale of a product, without more, does not infringe the patent. Instead, direct infringement of a method claim requires a showing that every step of the claimed method has been practiced." *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1366 (Fed Cir. 2012) (citations omitted). Additionally, the Federal Circuit has held that the sale of equipment to perform a patented process does not constitute direct infringement of that process. *Joy*, 6 F.3d at 773-74.

Finally, limiting direct infringement of method claims to use of such methods makes sense in light of the longstanding rule that ideas are not patentable. *See Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) ("Laws of nature, natural phenomena, and abstract ideas are not patentable." (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S.Ct. 2107, 2116 (2013))). Methods, like abstract ideas, "are 'conception[s] of the mind, seen only by [their] effects when being executed or performed.'" *Parker v. Flook*, 437 U.S. 584, 589 (1978) (quoting *Tilghman v. Proctor*, 102 U.S. 707, 728 (1880)). Of course, methods are patentable as novel applications of ideas. *See id.* at 594. But short of

12

application, *i.e.*, use, a method is merely an idea. Just as an idea without an application cannot be patented, a method claim without actual application cannot be infringed.

In accordance with *NTP* and the district courts that have followed *NTP*, the Court finds that the method claims in WWCS's '185 Patent can be infringed only by use. WWCS has failed to put forth any evidence showing that Oceaneering used the methods described in the '185 Patent since the patent issued on September 6, 2016. Thus, WWCS cannot establish direct infringement under 35 U.S.C. § 271(a). Because WWCS cannot establish direct infringement, its indirect infringement allegation also fails as a matter of law. *See* 35 U.S.C. § 271(b); *Power Integrations*, 843 F.3d at 1331 ("We have . . . held that '[t]o prevail under a theory of indirect infringement, [plaintiff] must first prove that the defendants' actions led to direct infringement of the [patent-in-suit].'" (quoting *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004))). Accordingly, Oceaneering is entitled summary judgment on WWCS's claim for infringement of the '185 Patent.

## IV. CONCLUSION

For the foregoing reasons, Oceaneering's partial motion for summary judgment is GRANTED. WWCS's claim for infringement of the '185 Patent is DISMISSED.

New Orleans, Louisiana, this __28th__ day of August, 2017.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE