UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WRIGHT'S WELL CONTROL SERVICES, LLC | CIVIL ACTION |
| VERSUS | NO. 15-1720 |
| OCEANEERING INTERNATIONAL, INC. | SECTION "R" (3) |

### ORDER AND REASONS

Before the Court are Plaintiff Wright's Well Control Services, LLC's motions to dismiss Defendants Oceaneering International, Inc.'s and Christopher Mancini's counterclaims for attorney's fees.[1] For the following reasons, the Court grants plaintiff's motions.

## I. BACKGROUND

The facts and allegations that follow are limited to what is relevant to the two motions before the Court.[2] Plaintiff Wright's Well Control Services, LLC (WWCS) and Defendant Oceaneering International, Inc. (Oceaneering)

---

[1] R. Docs. 224, 225.
[2] A more in-depth discussion of the facts underlying this dispute can be found in the Court's November 16, 2015 Order. *See generally* R. Doc. 56. A more extensive discussion of the deep-sea technology and associated patents at issue can be found in the Court's February 13, 2017 Order. *See generally* R. Doc. 141.

both provide hydrate remediation services for the oil and gas industry. WWCS alleges that by the end of 2009 it developed a "hydrate remediation system" that provided a faster, safer, and more cost-effective way to clear hydrates in deepwater environments.[3] It further alleges that Oceaneering and WWCS worked together on at least two hydrate remediation projects in 2009 and 2010, the ATP job and the Marubeni Job.[4] WWCS contends that, while working together on these jobs, Oceaneering stole WWCS trade secrets related to its hydrate remediation system to develop Oceaneering's own hydrate remediation system, the "Flowline Remediation System" (FRS). Oceaneering asserts that at some point between 2009 and 2011, Oceaneering independently built its FRS without trade secrets from WWCS, and started to use its FRS in competition with WWCS's system.[5]

On February 27, 2017, WWCS filed its fourth amended complaint, which is the operative complaint, against both Oceaneering and Oceaneering employee Christopher Mancini.[6] The complaint asserts patent infringement claims, as well as claims for Louisiana statutory misappropriation of trade secrets under the Louisiana Uniform Trade Secrets Act, Texas common law

---

[3] R. Doc. 147 at 4-6.
[4] R. Doc. 182-2 at 3-9.
[5] R. Doc. 182-1 at 6.
[6] R. Doc. 147.

misappropriation, Texas common law misappropriation of trade secrets, and Texas common law breach of contract, breach of confidential relationship, tortious interference with prospective business relations, fraudulent inducement, business disparagement, and unfair competition.[7]

Mancini filed an answer and a counterclaim for attorney's fees on March 13, 2017.[8] Oceaneering filed an answer and several counterclaims, including one for attorney's fees, on March 16, 2017.[9] Both defendants sought attorney's fees under Texas Civil Practice and Remedies Code Sections 134A.005 and 38.001, and Louisiana Revised Statutes Section 51:1434.[10] WWCS now moves to dismiss defendants' counterclaims for attorney's fees.[11] In response to plaintiff's motion, Mancini abandoned his counterclaim for attorney's fees under Texas Civil Practice and Remedies Code Section 38.001.[12] Therefore, the Court will not address the merits of that counterclaim.

---

[7]    *Id.* at 36-46 ¶¶ 89-139.
[8]    R. Doc. 157. The Court has since granted plaintiff's motion to voluntarily dismiss its claims against Mancini with prejudice. R. Doc. 170.
[9]    R. Doc. 161.
[10]   R. Doc. 157 at 43; R. Doc. 161 at 49-50.
[11]   R. Doc. 224, 225.
[12]   R. Doc. 237 at 6.

## II. LEGAL STANDARD

The Court applies the same test to a motion to dismiss a counterclaim as it does to a motion to dismiss a complaint. To survive a Rule 12(b)(6) motion to dismiss, plaintiffs must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 257. If there

are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007), the claim must be dismissed.

## III. DISCUSSION

### A. Oceaneering's Counterclaim for Attorney's Fees on Plaintiff's Breach of Contract Claim

WWCS first argues that Oceaneering's counterclaim for attorney's fees under Texas Civil Practice and Remedies Code Section 38.001 must be dismissed because that provision does not authorize attorney's fees against limited liability companies.[13] Because state law provides the rule of decision for this counterclaim, the Court must apply the law as interpreted by the state's highest court. *See F.D.I.C. v. Abraham*, 137 F.3d 264, 267-68 (5th Cir. 1998); *Samuels v. Doctors Hosp., Inc.*, 588 F.2d 485, 488 (5th Cir. 1979). When there is no ruling by the state's highest court, a federal court must make an *Erie* guess as to how the state's highest court would decide the issue.

---

13 R. Doc. 225-1 at 4-5.

5

*Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 468 (5th Cir. 2004).

Section 38.001 authorizes "attorney's fees from an individual or corporation" on breach of contract claims. The Texas Supreme Court has not addressed the scope of this provision. But in *Alta Mesa Holdings, L.P. v. Ives*, 488 S.W.3d 438 (Tex. Ct. App. 2016), a Texas court of appeal held that this provision does not allow attorney's fees against limited liability companies. The court observed that, "as used in Texas statutes, the legal entities identified by the terms 'corporation' and 'limited liability company' are distinct entities with some but not all of the same features." *Id.* at 453. Further, the court noted that an earlier version of Section 38.001 "provided that 'any person, corporation, partnership, or other legal entity having a valid claim against a person or corporation' could recover attorney's fees against the 'persons or corporation.'" *Id.* at 454 (quoting Tex. Rev. Civ. Stat. art. 2226 (repealed 1985)). This language suggested that the term corporation "was not intended to encompass" partnerships or other legal entities, "because to read the term otherwise would render use of these other terms meaningless." *Id.* The codification of Article 2226 into Section 38.001 "was intended to be nonsubstantive in nature"; thus, the court found, the term

corporation in Section 38.001 does not cover "'other legal entities' such as LLCs." *Id.* at 455.

A number of courts, both federal and state, have also held that Section 38.001 does not authorize attorney's fees against limited liability companies. *See, e.g.*, *BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*, No. 15-627, 2017 WL 2730739, at *19 (S.D. Tex. June 26, 2017); *Hoffman v. L & M Arts*, No. 10-953, 2015 WL 1000838, at *10 (N.D. Tex. Mar. 6, 2015); *CBIF Ltd. P'ship v. TGI Friday's Inc.*, No. 15-157, 2017 WL 1455407, at *25 (Tex. App. Apr. 21, 2017) ("Under the plain language of section 38.001, a trial court cannot order limited liability partnerships, limited liability companies, or limited partnerships to pay attorney's fees."); *see also Choice! Power, L.P. v. Feeley*, 501 S.W.3d 199, 214 (Tex. App. 2016) (interpreting corporation narrowly "to exclude other legal entities"). Additionally, the Fifth Circuit has noted (in dictum) that one Texas case supported the district court's *Erie* guess that a limited liability company is not a corporation under Section 38.001. *Hoffman v. L & M Arts*, 838 F.3d 568, 583 n.14 (5th Cir. 2016).

The Court finds the foregoing authority persuasive. Based on both plain meaning and statutory history, the Texas Supreme Court would likely hold that Section 38.001 does not authorize attorney's fees against limited

liability companies. Thus, Oceaneering has failed to state a claim against WWCS for attorney's fees under Section 38.001.

### B. Defendants' Counterclaims for Attorney's Fees on Plaintiff's Trade Secrets Claims

WWCS next argues that defendants' counterclaims for attorney's fees under Texas and Louisiana trade secrets statutes should be dismissed for lack of sufficient factual allegations.[14] Both statutes permit a court to award attorney's fees to the prevailing party if, among other things, a misappropriation claim is made in bad faith. La. R.S. § 51:1434; Tex. Civ. Prac. & Rem. Code § 134A.005.

Oceaneering's counterclaim fails to state a claim for attorney's fees under the trade secrets statutes because it does not allege sufficient factual allegations to support a finding of bad faith. Oceaneering argues that WWCS alleged trade secrets misappropriation in bad faith because WWCS failed to protect its trade secrets.[15] Specifically, according to Oceaneering, WWCS attached documents containing alleged trade secrets to the complaint.[16] This assertion surely pertains to whether plaintiff "has taken reasonable measures under the circumstances to keep the information secret"—one of the

---

[14] R. Doc. 224-1 at 5-7; R. Doc. 225-1 at 5.
[15] R. Doc. 236 at 7-8.
[16] R. Doc. 161 at 4 ¶ 14.

8

definitional elements of a trade secret. Tex. Civ. Prac. & Rem. Code § 134A.002; *see also* La. R.S. § 51:1431. But it does not suggest that WWCS acted dishonestly, or with some improper purpose, in bringing trade secrets claims against Oceaneering. *See Direct Techs., LLC v. Elec. Arts, Inc.*, 836 F.3d 1059, 1071 (9th Cir. 2016) (affirming denial of attorney's fees because no evidence suggested that plaintiff brought trade secrets claim "for an improper purpose such as to extort a settlement"). Moreover, that WWCS attached allegedly secret information to its complaint has no bearing on whether Oceaneering misappropriated this information before the filing of the complaint.

Mancini's counterclaim also fails to allege sufficient factual allegations to support a finding of bad faith. Mancini asserts that WWCS had no basis to bring trade secrets claims against Mancini in his individual capacity, rather than as an Oceaneering employee. According to Mancini, WWCS co-founder David Wright testified in a deposition that he did not believe Mancini misappropriated WWCS's trade secrets in his individual capacity.[17] Absent some statutory exemption, however, employees are liable for the torts they commit within the scope of their employment. *See Miller v. Keyser*, 90 S.W.3d 712, 717 (Tex. 2002) (noting "Texas' longstanding rule that a

---

17   R. Doc. 157 at 41 ¶ 209.

9

corporate agent is personally liable for his own fraudulent or tortious acts"); *Richardson v. Darby*, 352 So. 2d 725, 726 (La. App. 4 Cir. 1977) ("An agent's liability for his own tortious acts is unaffected by the fact that he acted in his representative capacity or by the authority or direction of another." (citation omitted)); *see also PMC, Inc. v. Kadisha*, 93 Cal. Rptr. 2d 663, 678 (Cal. Ct. App. 2000) (holding that a corporate officer is liable if she "knows or has reason to know about tortious misappropriation . . . and allows it to occur"); Restatement (Third) Of Agency § 7.01 (2006) ("An agent is subject to liability to a third party harmed by the agent's tortious conduct. Unless an applicable statute provides otherwise, an actor remains subject to liability although the actor acts as an agent or an employee, with actual or apparent authority, or within the scope of employment."). Thus, even if Mancini committed trade secrets misappropriation in his capacity as an Oceaneering employee—as WWCS alleged in its complaint—Mancini could have been held personally liable.[18]

---

[18] As noted earlier, WWCS has voluntarily dismissed Mancini from this lawsuit.

## IV. CONCLUSION

For the foregoing reasons, plaintiff's motions to dismiss defendants' counterclaims for attorney's fees are GRANTED. Defendants' counterclaims for attorney's fees are DISMISSED.

New Orleans, Louisiana, this __20th__ day of November, 2017.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE