UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| WRIGHT'S WELL CONTROL SERVICES, LLC | CIVIL ACTION |
|---|---|
| VERSUS | NO. 15-1720 |
| OCEANEERING INTERNATIONAL, INC. | SECTION "R" (3) |

### ORDER AND REASONS

Plaintiff Wright's Well Control Services, LLC moves for reconsideration or clarification of the Court's August 23, 2017 order.[1] For the following reasons, the Court grants in part and denies in part plaintiff's motion.

## I. BACKGROUND

The facts and allegations that follow are limited to what is relevant to the two motions before the Court.[2] Plaintiff Wright's Well Control Services, LLC (WWCS) and Defendant Oceaneering International, Inc. (Oceaneering)

---

[1] R. Doc. 264.
[2] A more in-depth discussion of the facts underlying this dispute can be found in the Court's November 16, 2015 Order. *See generally* R. Doc. 56. A more extensive discussion of the deep-sea technology and associated patents at issue can be found in the Court's February 13, 2017 Order. *See generally* R. Doc. 141.

both provide hydrate remediation services for the oil and gas industry. WWCS alleges that by the end of 2009 it developed a "hydrate remediation system" that provided a faster, safer, and more cost-effective way to clear hydrates in deepwater environments.[3] It further alleges that Oceaneering and WWCS worked together on at least two hydrate remediation projects in 2009 and 2010, the ATP job and the Marubeni Job.[4] WWCS contends that, while working together on these jobs, Oceaneering stole WWCS trade secrets related to its hydrate remediation system to develop Oceaneering's own hydrate remediation system, the "Flowline Remediation System" (FRS). Oceaneering asserts that at some point between 2009 and 2011, Oceaneering independently built its FRS without trade secrets from WWCS, and started to use its FRS in competition with WWCS's system.[5]

On May 21, 2015, WWCS filed its initial complaint against Oceaneering, pleading patent infringement as well as various claims under Texas and Louisiana state law.[6] On November 16, 2015, the Court dismissed WWCS's breach of contract claim with prejudice to the extent it that rested on information in WWCS's patent applications or on conduct that occurred

---

[3]  R. Doc. 147 at 4-6.
[4]  R. Doc. 182-2 at 3-9.
[5]  R. Doc. 182-1 at 6.
[6]  R. Doc. 1.

after December 11, 2012, and dismissed plaintiff's statutory trade secret misappropriation claim under the Texas Uniform Trade Secrets Act.[7] After plaintiff filed a second and third amended complaint, Oceaneering moved to dismiss plaintiff's federal patent infringement claims. On February 13, 2017, the Court granted Oceaneering's motion and dismissed WWCS's patent claims, but without prejudice and with leave to amend.[8]

On February 27, 2017, WWCS filed its fourth amended complaint, which is the operative complaint.[9] The complaint asserts patent infringement claims, as well as claims for Texas common law misappropriation, Texas common law misappropriation of trade secrets, Louisiana statutory misappropriation of trade secrets under the Louisiana Uniform Trade Secrets Act ("LUTSA"), and Texas common law breach of contract, breach of confidential relationship, tortious interference with prospective business relations, fraudulent inducement, business disparagement, and unfair competition.[10]

Oceaneering then moved for partial summary judgment, arguing that WWCS's Texas law business disparagement, unfair competition, common

---

[7] R. Doc. 56 at 42.
[8] R. Doc. 141 at 21.
[9] R. Doc. 147.
[10] *Id.* at 36-46 ¶¶ 89-139.

law misappropriation, breach of confidential relationship, and tortious interference with prospective business relations claims were time-barred.[11] The Court granted this motion in part and dismissed WWCS's claims for business disparagement, unfair competition, common law misappropriation, and breach of confidential relationship.[12] WWCS now moves for reconsideration or clarification of the Court's order.[13]

## II.  LEGAL STANDARD

A district court has considerable discretion to grant or deny a motion under Federal Rule of Civil Procedure 59(e).  *See Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993).  But "reconsideration of a previous order is an extraordinary remedy which should be used sparingly." *Fields v. Pool Offshore, Inc.*, 1998 WL 43217, at *2 (E.D. La. Feb. 3, 1998); *see also Bardwell v. George G. Sharp, Inc.*, 1995 WL 517120, at *1 (E.D. La. Aug. 30, 1995).  The Court must "strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co.*, 6 F.3d at 355.  A moving party must satisfy at least one of the following criteria to prevail on a Rule

---

[11]  R. Doc. 172.
[12]  R. Doc. 258.
[13]  R. Doc. 264.

4

59(e) motion: (1) the motion is necessary to correct a manifest error of fact or law; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; and (4) the motion is justified by an intervening change in the controlling law. *See Fid. & Deposit Co. of Md. v. Omni Bank*, 1999 WL 970526, at *3 (E.D. La. Oct. 21, 1999); *Fields*, 1998 WL 43217, at *2; *see also Compass Tech., Inc. v. Tseng Labs., Inc.*, 71 F.3d 1125, 1130 (3d Cir. 1995) ("Rule 59 and Rule 60(b)(2) share the same standard for granting relief on the basis of newly discovered evidence.").

### III. DISCUSSION

#### A. Business Disparagement

WWCS first argues that the Court erred in granting summary judgment to Oceaneering on WWCS's business disparagement claim. Specifically, WWCS contends that certain disparaging statements by Oceaneering employees were made within the limitations period. According to WWCS, the Court erred by addressing the merits of WWCS's claim and deeming these later statements not disparaging.

In its fourth amended complaint, WWCS alleges that "Oceaneering published knowingly false information about Plaintiff at least to BP and to

5

others after Plaintiff lost the THR Project to BP in July 2013."[14] "Specifically," the complaint continues, "Christopher Mancini made certain statements to BP while Plaintiff was bidding on a hydrate remediation job. Mancini made knowingly false representations that the WWCS Remediation System does not work, despite Mancini being present at multiple successful remediation jobs perform by Plaintiff."[15] Oceaneering moved for summary judgment on the business disparagement claim, arguing that WWCS learned of Mancini's statements in 2012.[16] Oceaneering based its argument on the testimony of WWCS founder David Wright, who stated that he learned of Mancini's statements in 2011 or 2012.[17] WWCS did not dispute this fact.[18] Instead, WWCS asserted that there might have been other instances of business disparagement within the limitations period.[19] The Court rejected this argument, noting that the specific statements offered by WWCS as examples of disparagement simply were not disparaging.[20]

WWCS offers no compelling reason for the Court to reconsider its earlier order. The only additional statement WWCS points to as an example

---

[14] R. Doc. 147 at 44 ¶ 131.
[15] *Id.* at 44-45 ¶ 132.
[16] R. Doc. 172-1 at 11-12.
[17] *See id.* at 12-13.
[18] *See* R. Doc. 195-4 at 6.
[19] *See id.*; R. Doc. 195 at 12-13.
[20] R. Doc. 258 at 10-11 n.28.

6

of business disparagement is a brochure to a prospective customer, in which Oceaneering allegedly took credit for work performed by WWCS.[21] Like the other examples of alleged business disparagement cited by WWCS, it is not clear how this statement is disparaging, and WWCS does not cite any authority to show that it is. These alleged instances of business disparagement do not suffice to raise a genuine dispute as to when WWCS's business disparagement claim accrued. In any event, the business disparagement claim in WWCS's fourth amended complaint is based on Mancini's statements about the quality of WWCS's hydrate remediation system.

### B. Unfair Competition

WWCS next argues that the Court improperly dismissed the entirety of its unfair competition claim. Texas unfair competition "requires that the plaintiff show an illegal act by the defendant which interfered with the plaintiff's ability to conduct its business. Although the illegal act need not necessarily violate criminal law, it must at least be an independent tort." *Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000) (citation omitted).

---

[21] R. Doc. 264-1 at 6 n.3.

WWCS's complaint sets out several independent torts as bases for its unfair competition claim, including misappropriation and tortious interference with prospective business relations.[22] In its motion for summary judgment, Oceaneering focused solely on unfair competition by misappropriation.[23] The Court, in turn, addressed only this form of unfair competition, and neglected to address unfair competition based on tortious interference.[24]

The Court clarifies that Oceaneering is entitled summary judgment on WWCS's unfair competition claim only to the extent that the claim is based on misappropriation. The Court held that WWCS's tortious interference claim accrued in July 2013, and therefore was timely filed in May 2015.[25] For the same reason, WWCS's unfair competition claim based on tortious interference was also timely filed.

---

[22] R. Doc. 147 at 45-46 ¶¶ 136-38.
[23] *See* R. Doc. 172-1 at 14-15.
[24] R. Doc. 258 at 12.
[25] *Id.* at 11-12.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES plaintiff's motion to reconsider its August 23, 2017 order. The Court clarifies that plaintiff's unfair competition claim is not dismissed to the extent it is based on tortious interference with prospective business relations.

New Orleans, Louisiana, this __28th__ day of December, 2017.

_____Sarah Vance_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE