UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WRIGHT'S WELL CONTROL
SERVICES, LLC

CIVIL ACTION

VERSUS

NO. 15-1720

OCEANEERING INTERNATIONAL,
INC.

SECTION "R" (3)

## ORDER AND REASONS

Plaintiff Wright's Well Control Services, LLC moves for summary judgment on defendant Oceaneering International, Inc.'s counterclaims.[1] For the following reasons, the Court grants the motion.

## I. BACKGROUND

The facts and allegations that follow are limited to what is relevant to the motion before the Court.[2] Plaintiff Wright's Well Control Services, LLC (WWCS) and defendant Oceaneering International, Inc. (Oceaneering) both provide hydrate remediation services for the oil and gas industry. A hydrate is an ice-like solid that forms when water becomes mixed with oil and/or gas

---

[1]    R. Doc. 381.
[2]    A more in-depth discussion of the facts underlying this dispute can be found in the Court's April 19, 2018 order.  *See* R. Doc. 427.

at high pressure and low temperature.[3]  Hydrates can cause a pipeline to become blocked by "hydrate plugs," resulting in a loss of production.[4]  This dispute concerns systems developed by both parties for removing hydrates from subsea, deepwater pipelines.

In 2008, ATP Oil and Gas Corporation contracted with Oceaneering to remove hydrates from a pipeline.[5]  At the time, Oceaneering had a hydrate remediation skid designed to clear hydrate plugs in smaller tubing; Oceaneering had not yet used it on a pipeline.[6]  Oceaneering successfully cleared some, but not all, of the hydrate plugs from ATP's pipeline in early 2009.[7]  ATP then contracted with WWCS to conduct further hydrate remediation in ATP's pipeline, even though WWCS did not yet have a complete hydrate remediation system.[8]  WWCS developed its hydrate remediation system specifically for high-volume, deepwater applications.[9] The parties worked together on this job for ATP, and allegedly executed a

---

[3]    R. Doc. 147 at 3 ¶ 12.
[4]    *Id.* at 3-4 ¶¶ 12-13.
[5]    *Id.* at 7 ¶¶ 22-23.
[6]    *See* R. Doc. 300-10 at 13-14; R. Doc. 300-46 at 4.
[7]    R. Doc. 300-12 at 11.
[8]    *Id.* at 6-15.
[9]    *See id.* at 7-8; R. Doc. 300-13 at 3.

Reciprocal Nondisclosure of Confidential and Proprietary Information Agreement (NDA) on December 11, 2009.[10]

WWCS asserts that it completed the design and manufacture of its hydrate remediation system by early 2010.[11] WWCS's system successfully cleared the remaining hydrates in ATP's pipeline by March 2010.[12] The parties worked together on several additional jobs using WWCS's system. According to WWCS, it has not used its hydrate remediation system since January 2011.[13] Oceaneering developed its Flowline Remediation System (FRS) from 2009 to 2011. WWCS alleges that Oceaneering developed the FRS using confidential information disclosed under the NDA.[14]

WWCS filed its initial complaint on May 21, 2015.[15] The fourth amended complaint, which is the operative complaint, was filed on February 27, 2017.[16] Oceaneering filed its answer and counterclaims on March 16, 2017.[17] Oceaneering counterclaimed for unfair competition under 15 U.S.C. § 1125, Texas state law unfair competition, breach of contract, unjust

---

[10]     R. Doc. 381-14.
[11]     R. Doc. 381-1 at 2.
[12]     R. Doc. 300-15 at 5.
[13]     R. Doc. 381-1 at 2.
[14]     R. Doc. 147 at 12 ¶ 39.
[15]     R. Doc. 1.
[16]     R. Doc. 147.
[17]     R. Doc. 161.

enrichment, and attorney's fees. The Court dismissed Oceaneering's counterclaim for attorney's fees on November 20, 2017.[18] WWCS now moves for summary judgment on Oceaneering's remaining counterclaims.[19]

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at

---

[18]    R. Doc. 318.
[19]    R. Doc. 381.

4

1075.  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991).  The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for

trial.  *See, e.g.*, *id.*; *Little*, 37 F.3d at 1075 ("Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (quoting *Celotex*, 477 U.S. at 322)).

## III.  DISCUSSION

WWCS moves for summary judgment on Oceaneering's counterclaims on the ground that insufficient evidence supports these claims.  In addition to arguing that there is sufficient evidence in support of its counterclaims, Oceaneering urges the Court to strike WWCS's motion and to dismiss WWCS's breach of contract claim as untimely.

The Court further notes that each party's briefs are full of vitriol and accusations of ethical violations by the other party.  Such vitriolic statements and unfounded accusations add nothing to the parties' arguments.  The parties shall refrain from this type of argumentation in any oral or written statements to this Court.

## A.    Untimeliness of WWCS's Motion

Oceaneering first argues that WWCS's motion should be stricken for untimeliness.[20]  Under the Court's scheduling order, the deadline to file non-evidentiary pretrial motions—including summary judgment motions—was March 13, 2018.[21]  WWCS filed its motion for summary judgment one week later, on March 20.  Thus, WWCS's motion is untimely.

The Court nevertheless declines to strike WWCS's motion.  A district court has broad discretion to extend filing deadlines and to accept late-filed motion papers.  *See Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 367 (5th Cir. 1995).  Moreover, Oceaneering fails to explain how it is prejudiced by the one-week delay in the filing of WWCS's motion.  Therefore, the Court proceeds to the merits of the summary judgment motion.

## B.    Oceaneering's Counterclaims

### 1.    Unfair Competition in Violation of 15 U.S.C. § 1125

Oceaneering's first counterclaim alleges that WWCS violated Section 43 of the Lanham Act, 15 U.S.C. § 1125, by falsely designating the origin of an Oceaneering schematic.[22]  Specifically, WWCS allegedly instructed a third party, Gulf Coast Manufacturing, to replace Oceaneering's logo on a

---

[20]    R. Doc. 406 at 6.
[21]    R. Doc. 223 at 2.
[22]    R. Doc. 161 at 46 ¶¶ 229-230.

schematic with WWCS's logo.[23]  According to Oceaneering, "WWCS passed off this derivative work as its own to third parties when advertising and bidding on remediation projects."[24]

Section 43 of the Lanham Act provides in relevant part:

Any person who, on or in connection with any goods or services, . . . uses in commerce . . . any false designation of origin, . . . which—

(A) is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin . . . of his or her goods, . . . or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, . . .

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).  Oceaneering's claim asserts reverse passing off, or reverse palming off, which involves "selling or offering for sale another's product that has been modified slightly and then labeled with a different name."  *Roho, Inc. v. Marquis*, 902 F.2d 356, 359 (5th Cir. 1990); *see also Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 588 (5th Cir. 2015).  This claim requires evidence of both "use of false designation of origin and false representation in interstate commerce."  *Roho*, 902 F.2d at 358.  Oceaneering provides neither.  First, Oceaneering cites no evidence that

---

[23]     *Id.* at 44 ¶ 219.
[24]     *Id.* ¶ 220.

WWCS used its modified schematic in interstate commerce. Second, the schematic portrays WWCS's system, including the separator with the internal ball valve.[25] Of course, the use of WWCS's logo on the schematic does not falsely designate the origin of the WWCS system.

Oceaneering raises an additional allegation in support of its § 1125 claim in response to WWCS's summary judgment motion: that WWCS passed off Oceaneering's ROV as its own by removing Oceaneering's logo from photographs of the ROV and publishing those photographs in presentations and industry journals.[26] This allegation is not properly before the Court because it was not included in Oceaneering's pleadings. *See Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."). Moreover, Oceaneering fails to point to any evidence of damages it sustained because of WWCS's purported violations of the Lanham Act. For these reasons, WWCS is entitled summary judgment on Oceaneering's Lanham Act counterclaim.[27]

---

[25]    *See* R. Doc. 161-2 at 3-11.

[26]    R. Doc. 406 at 13.

[27]    To the extent Oceaneering asserts unfair competition under Texas law based on this conduct, *see* R. Doc. 406 at 14, the claim fails for the same reasons Oceaneering's Lanham Act claim fails. *See Amazing Spaces, Inc. v.*

## 2. Unfair Competition in Violation of Texas Law

Oceaneering's state law unfair competition claim is based on two alleged actions: (1) a WWCS employee "snooped" on Oceaneering's FRS, and WWCS incorporated, or plans to incorporate, information obtained by snooping into its own system; and (2) WWCS obtained and misused information about Oceaneering's bid on the BP project.[28]

In support of its allegations of snooping, Oceaneering cites a January 2011 email chain between Ben Comperry, purportedly a WWCS employee, and David Wright, WWCS's founder. Comperry sent three photographs of Oceaneering's "new skid" and relayed information about the skid, including that it had "cameras all over it."[29] Comperry explained in another email that he was "snooping" on Oceaneering.[30] In response, Wright stated that WWCS "will be adding camera and ROV arms to ours," and told Comperry: "Do not snoop to[o] much. We do not need any conflict with Oceaneering on subsea tools. The[ir]s and ours."[31]

---

*Metro Mini Storage*, 608 F.3d 225, 236 n.7 (5th Cir. 2010) (noting that the same analysis applies to unfair competition claims under both Texas law and the Lanham Act).

[28] R. Doc. 161 at 49 ¶¶ 245-246.
[29] R. Doc. 406-1.
[30] *Id.*
[31] *Id.*

To show that WWCS obtained and misused Oceaneering's bid information, Oceaneering first points to an email chain between Wright and JP Kenny employee Michael Dohm. Wright asked Dohm to send him the "Oceaneering gas separator" on October 25, 2012.[32] At the time, Oceaneering and WWCS were bidding against each other on a hydrate remediation project for BP. Dohm sent Wright a presentation and a document describing Oceaneering's FRS.[33] According to Oceaneering, WWCS then modified its bid.[34]

Texas unfair competition "requires that the plaintiff show an illegal act by the defendant which interfered with the plaintiff's ability to conduct its business. Although the illegal act need not necessarily violate criminal law, it must at least be an independent tort." *Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000) (citation omitted). Oceaneering does not identify the independent tort upon which its state law unfair competition claim relies, but its allegations sound in misappropriation of trade secrets and tortious interference with potential business relations. "A trade secret misappropriation in Texas requires: (a) the existence of a trade secret; (b) a breach of a confidential relationship or improper discovery of the trade

---

[32] R. Doc. 406-5.
[33] *Id.*
[34] R. Doc. 406 at 11; R. Doc. 406-9.

11

secret; (c) use of the trade secret; and (d) damages." *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1123 (5th Cir. 1991). Tortious interference with prospective business relations requires: "(1) a reasonable probability or expectation of entering into a contractual relationship; (2) intentional and malicious conduct by the defendant that prevents consummation of the contract; (3) no justification or privilege shields the defendant; and (4) actual harm or damages caused by defendant's conduct." *Small Bus. Assistance Corp. v. Clear Channel Broad., Inc.*, 210 F.3d 278, 281 n.1 (5th Cir. 2000).

Regarding misappropriation of trade secrets, Oceaneering has pointed to evidence that WWCS improperly obtained photographs and information about Oceaneering's new skid from Comperry. It is disingenuous for WWCS to argue that Wright told Comperry not to snoop; the email clearly states: "Do not snoop *to[o] much.*"[35] Nevertheless, Oceaneering has failed to offer evidence of misuse or damages in support of its misappropriation allegations.

Regarding tortious interference with prospective business relations, it is clear that both parties were in contention for the BP project.[36] Oceaneering has introduced evidence showing that WWCS asked third party

---

[35] R. Doc. 406-1 (emphasis added).
[36] *See* R. Doc. 406-14.

JP Kenny for information about Oceaneering's separator.[37]  JP Kenny sent back documents describing the FRS, and Oceaneering characterizes these documents as information related to its bid on the BP project.  Even if these facts suffice to raise a genuine dispute as to WWCS's intentional and malicious conduct, however, there is no evidence suggesting that WWCS's subsequent modification of its bid was related to the documents it received from JP Kenny.  Moreover, WWCS lost the BP bid, and Oceaneering has not pointed to any other injury it suffered by virtue of WWCS's possession and purported misuse of Oceaneering's bid information.  Thus, WWCS is entitled summary judgment on Oceaneering's state law unfair competition counterclaim.

### 3.    Breach of Contract

Oceaneering's breach of contract counterclaim asserts that WWCS violated the NDA by misusing and improperly disclosing confidential information.[38]  This allegedly confidential information comprises: (1) Oceaneering's Emergency Quick Disconnect Operations and

---

[37]    R. Doc. 406-5.
[38]    R. Doc. 161 at 47 ¶¶ 235-236.

Maintenance Manual (EQD Manual);[39] and (2) the documents describing the FRS that WWCS obtained from JP Kenny.[40]

Oceaneering sent the EQD Manual to WWCS on March 17, 2010.[41] WWCS provided the EQD Manual to Gulf Coast Manufacturing on June 15, 2010.[42] According to Oceaneering, WWCS provided the EQD Manual so that Gulf Coast Manufacturing could modify Oceaneering's EQDs.[43] Oceaneering appears to argue that this was improper disclosure under the NDA. As to the second type of confidential information, as the Court explained earlier, WWCS obtained documents describing Oceaneering's FRS in connection with Oceaneering's bid on the BP project. Oceaneering asserts that WWCS misused this information by altering its bid after receiving the documents describing the FRS.[44] In addition, Oceaneering argues that WWCS improperly disclosed these documents to Gulf Coast Manufacturing on December 11, 2012.[45]

---

[39] R. Doc. 406-3.
[40] R. Doc. 406-5.
[41] R. Doc. 420-10 at 2.
[42] R. Doc. 406-3.
[43] *See* R. Doc. 406 at 13.
[44] R. Doc. 406 at 11.
[45] R. Doc. 406-4.

Texas law governs the NDA.[46]  Under Texas law, "[t]he elements of a claim for breach of contract are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach."  *Hunn*, 789 F.3d at 579 (quoting *Foley v. Daniel*, 346 S.W.3d 687, 690 (Tex. App. 2009)).

Oceaneering has pointed to no evidence of damages it sustained because of WWCS's alleged breach of the NDA.  Notably, WWCS lost the BP bid to Oceaneering, and Oceaneering cites no other type of harm that WWCS's purported misuse of Oceaneering's bid information caused Oceaneering.

In addition, Oceaneering has failed to raise a genuine dispute as to whether WWCS's disclosure of the EQD Manual to Gulf Coast Manufacturing violated the NDA.  Two sections of the NDA are relevant to this counterclaim. First, Section Two of the NDA forbids disclosure of confidential information "to any third party unless[] further disclosure is previously approved in

---

[46]    For a more in-depth analysis of the NDA, see the Court's orders dated February 5, 2018, and April 19, 2018, R. Docs. 350, 427.

writing."[47]  Second, Section Four of the NDA prohibits disclosure "for any purpose not connected with the effort contemplated by the [NDA]."[48]

The purpose for which WWCS allegedly sent the EQD Manual to Gulf Coast Manufacturing—to modify the EQDs for a WWCS project with Oceaneering—was clearly connected with the effort contemplated by the NDA.  Additionally, under the terms of WWCS's September 15, 2009 purchase order for Oceaneering's EQDs, Oceaneering granted "a royalty-free, non-exclusive license . . . to use and reproduce any INTELLECTUAL PROPERTY of [Oceaneering] provided to [WWCS]."[49]  This purchase order gave WWCS Oceaneering's consent, in writing, to disclose the EQD Manual to Gulf Coast Manufacturing.  Oceaneering fails to offer any evidence showing that WWCS's disclosure was not connected with the effort contemplated by the NDA, or that the purchase order did not provide effective consent.  Thus, there is no evidence that WWCS's disclosure of the EQD Manual violated the NDA, and WWCS is entitled summary judgment on Oceaneering's breach of contract counterclaim.

---

[47]     R. Doc. 381-14 at 2.
[48]     *Id.* at 3.
[49]     R. Doc. 420-11 at 10.

#### 4.    Unjust Enrichment

Oceaneering's final counterclaim seeks restitution for WWCS's use of Oceaneering's schematics and drawings.[50] "An action for unjust enrichment is based upon the equitable principle that a person receiving benefits which were unjust for him to retain ought to make restitution." *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 461 (5th Cir. 2017) (quoting *Bransom v. Standard Hardware, Inc.*, 874 S.W.2d 919, 927 (Tex. App. 1994)). "A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Id.* at 462 (quoting *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)).

Oceaneering fails to articulate what benefit WWCS obtained from using Oceaneering's schematics and drawings. Indeed, Oceaneering's argument on its unjust enrichment counterclaim is limited to one footnote in which it states: "Oceaneering has provided ampl[e] facts which entitle Oceaneering to bring its cause of action under the theory of unjust enrichment."[51] Oceaneering cannot carry its summary judgment burden with this cursory statement. *See McFaul v. Valenzuela*, 684 F.3d 564, 571

---

[50]    R. Doc. 161 at 48 ¶ 241.
[51]    R. Doc. 406 at 14 n.26.

(5th Cir. 2012) ("Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence."). Moreover, there is no genuine dispute either that these schematics and drawings actually portrayed WWCS's system, or that Gulf Coast Manufacturing simply redrew the system after receiving the Oceaneering schematics.[52] WWCS is entitled summary judgment on Oceaneering's unjust enrichment counterclaim.

### C. Oceaneering's Statute of Limitations Defense

Oceaneering further argues in its opposition to WWCS's motion that the Court should *sua sponte* dismiss WWCS's breach of contract and fraudulent inducement claims as untimely.[53] Oceaneering's assertion of a statute of limitations defense at this point is untimely. *See* Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . statute of limitations . . . ."); Fed. R. Civ. P. 12(b) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required."). But "a defendant does not waive an affirmative defense if it is raised at a 'pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to

---

[52]   R. Doc. 381-32 (Gulf Coast Manufacturing Rule 30(b)(6) deposition).
[53]   R. Doc. 406 at 7.

respond.'" *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 610 (5th Cir. 2007) (quoting *Lucas v. United States*, 807 F.2d 414, 418 (5th Cir. 1986)). Just as Oceaneering is not prejudiced by WWCS's untimely motion for summary judgment, WWCS is not prejudiced by Oceaneering's untimely assertion of a statute of limitations defense. Accordingly, the Court will address this defense.

The statute of limitations for both claims is four years. *See Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) ("Texas applies a four-year statute of limitations to breach of contract claims." (citing Tex. Civ. Prac. & Rem. Code § 16.051)); Tex. Civ. Prac. & Rem. Code § 16.004(a)(4) (four-year statute of limitations period for actions based on fraud). But the discovery rule "operates to defer accrual of a cause of action until the plaintiff knows or, by exercising reasonable diligence, should have known of the facts giving rise to the claim." *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001). The rule is "a very limited exception to statutes of limitations," and applies "only when the nature of plaintiff's injury is both inherently undiscoverable and objectively verifiable." *Id.* An injury is inherently undiscoverable if it is, "by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence." *Id.* at 734-35 (citing *S.V. v. R.V.*, 933 S.W.2d 1, 7 (Tex. 1996)). Whether someone, by

exercising reasonable diligence, should have known of the facts giving rise to his or her claim is generally a question of fact for the jury. *See, e.g., Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 722 (Tex. 2016).

According to Oceaneering, WWCS must have learned about Oceaneering's alleged violations of the NDA no later than January 2011, when Comperry sent photographs of, and information about, Oceaneering's FRS to Wright. If WWCS's causes of action for breach of contract and fraudulent inducement accrued at that time, then the filing of its initial complaint in May 2015 would be untimely.

Oceaneering has failed to come forward with evidence that would entitle it to a directed verdict on its statute of limitations defense if the evidence went uncontradicted at trial. *See Int'l Shortstop*, 939 F.2d at 1264-65. In the email cited by Oceaneering, Comperry states:

> I was told the[irs] was all elect[r]ic motors, cameras all over it, and that a majority of it was elect[r]onic and operated via a control van. All the [ROVs] would have to do is hook up the E.F.L.'s and flying leads. That the[ir] system could self monitor its self, actuate its own valves.[54]

This information reveals no clear similarities between WWCS's system and the recently developed FRS such that WWCS would have been put on notice of Oceaneering's misuse of confidential information. *See Slusser v. Union*

---

[54]     R. Doc. 406-1.

*Bankers Ins. Co.*, 72 S.W.3d 713, 717 (Tex. App. 2002) ("A cause of action for breach of contract is generally regarded as accruing when the contract is breached *or when the claimant has notice of facts sufficient to place him on notice of the breach.*" (emphasis added)); *see also Berry-Helfand*, 491 S.W.3d at 722 ("Because the discovery rule applies to trade-secret misappropriation claims, however, the limitations period did not begin to run until [plaintiff] knew or should have known of facts that in the exercise of reasonable diligence would have led to discovery of the misappropriation."). In addition, the photographs taken by Comperry show Oceaneering's pump (the Subsea Hydraulic Power Unit, or SHPU), not the FRS itself.[55] As Oceaneering itself explains in its motion for summary judgment, the SHPU predated WWCS's system.[56] Moreover, Oceaneering's pump differs significantly from WWCS's in that the SHPU is ROV-powered, while WWCS's pump is powered by pressurized seawater.[57] Oceaneering fails to explain how Comperry's photographs of the SHPU would have put WWCS on notice of Oceaneering's alleged misuse of confidential information under the NDA. Thus, Oceaneering is not entitled summary judgment on its statute of limitations defense.

---

[55] R. Doc. 420-7.
[56] R. Doc. 374-1 at 11.
[57] *Id.*; *see also* R. Doc. 420-8.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS WWCS's motion for summary judgment.  Oceaneering's counterclaims are DISMISSED WITH PREJUDICE.  The Court further DENIES Oceaneering's request to dismiss WWCS's breach of contract and fraudulent inducement claims as untimely.

New Orleans, Louisiana, this _____20th_____ day of April, 2018.

*Sarah Vance*

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE